STATE v. NEAL.

(Filed December 23, 1901.)

LANDLORD AND TENANT—*Removal of Crops by Tenant—The Code, Sec. 1759—Evidence.*

> Where a tenant is indicted for removal of a crop, he may show that on account of the breach of the contract of rental by the landlord he was due the landlord nothing at the time of the removal.

CLARK and COOK, J.J., dissenting.

INDICTMENT against Geo. M. Neal, heard by Judge *A. L. Coble,* at April Term, 1901, of the Superior Court of NASH County. From the judgment granting a new trial in the Eastern Criminal Court, the Solicitor appealed.

*Robert D. Gilmer, Attorney-General,* for the State.
No counsel for the defendant.

MONTGOMERY, J.   The indictment is for the removal of a crop of cotton under section 1759 of The Code.   That section is in the following words:  "Any lessee or cropper, or the assignees of either, or any other person, who shall remove said crop or any part thereof from such land without the consent of the lessor or his assignees, and without giving him or his agent five days' notice of such intended removal, and before satisfying all the liens held by the lessor or his assignees on said crop, shall be guilty of a misdemeanor; and if any landlord shall unlawfully, wilfully, knowingly, and without process of law, and unjustly seize the crop of his tenant when there is nothing due him, he shall be guilty of a misdemeanor."

On the trial the defendant offered to testify that there was embraced in the contract between the landlord and himself a promise on the part of the landlord to repair the buildings on

the rented premises and that he failed to do so; and he also offered to testify that the landlord agreed to let him have 25 acres of land to cultivate that year, and instead let him have only 15 acres, and that in consequence of those breaches of the contract he had suffered damages to such an extent that at the time of the removal of the crop he owed nothing on the rent, or on account of advances. His Honor (the Judge of the Eastern Criminal Court) refused to allow the offered testimony and the defendant excepted. A verdict and judgment followed and the defendant appealed to the Superior Court. In that Court it was held that there was error in the ruling of his Honor (the Judge of the Eastern Criminal Court) rejecting the offered evidence, and a new trial was granted. The Solicitor for the State appealed to this Court.

The question presented for decision is a very important one in its practical relations to the agricultural interests of the State—important equally to the land owner and to the lessee and cropper. Can a lessee or cropper, who has not paid his rents and advances in money, or in a part of the crop, in an indictment for removal of the crops from the lands of his landlord without his consent, set up in that indictment the defence that he has suffered damages by a breach of the contract by the landlord in as great, or greater, amount than the amount due for rent and advances and try in the criminal action that question?

The Code, in the Chapter Landlord and Tenant, confers on the landlord remedies which guard his rights and interests in the crop more effectually than those afforded the tenant for the purpose of protecting his own against the landlord. The intention of the landlord, for instance, can be inquired of by the Court in indictments for the seizure of the crop of the tenant, and before he can be convicted the seizure must be shown to have been *unlawful, wilful, with a knowledge that nothing was due, without process of law and unjust.* On the

other hand, the intention of the tenant can not be inquired into; if he removes any part of the crop before satisfying all the liens held by the lessor or his assigns on the crop (even if he honestly believes he has paid all the rent) without a notice of five days to the landlord, or unless he gets the landlord's consent, his motives or intentions can not be gone into—he is guilty.

The main object of the statute, and especially section 1759 of The Code, is to protect the landlord. But we have no disposition either to extend the powers and rights of the landlord or to impair or restrict the rights and privileges of the tenant, and the law will not be construed by us to mean that the tenant can not remove the crop in cases where there is nothing due by him to his landlord or his assigns for rent, or for advancements, or to cover any amount due under stipulations in the contract. And we are of opinion that that matter can be shown in the trial of the indictment for the removal of the crop, although a verdict of not guilty would not be conclusive in a civil action afterwards brought about the same matter.

It is true that there are provisions in the Chapter entitled Landlord and Tenant in The Code which afford a speedy remedy to a tenant who has a controversy with his landlord in order that the rights of both may be ascertained and adjudicated. But the tenant is not compelled to resort to that remedy whenever the landlord makes a claim for rent or advances, or for damages for failure to comply with the stipulations in the lease or contract. He may, if there is nothing due, remove the crop without the notice required by the statute, or the consent of the landlord. And it makes no difference as to the question of whether the tenant is or is not indebted to the landlord is made to appear by proof that the tenant has suffered damages at the hands of the landlord by reason of his breach of the contract of rent or lease in a sum equal to or greater than the amount of the rent due, or by

proof of payment in money. Certainly in such an indictment the tenant would be allowed to prove, if he could, that he had paid in money to the landlord what he owed him—that there was nothing due; and we can not see any difference in legal effect between such a payment and a payment by the recovery of damages for a breach of contract by the landlord, and by which defendant has suffered in an amount equal to the rent due. The first method of proving payment is as much the trial of an action in debt is the last.

But, as we have said, the verdict of the jury on this indictment, even if in favor of the tenant defendant, could not estop the landlord from afterwards instituting a civil action against the tenant or a purchaser of the crop from him, either for its value or for its recovery in specie if it could be found. It would only put an end to criminal proceedings against either the tenant or a purchaser from him.

However, it may be proper to add that if in the trial of such an indictment it should turn out that the verdict would be against the defendant, neither his good intentions nor his motives, nor his belief that he had been endamaged by the landlord, would avail him, and they could not be proved on the trial. There was no error in the ruling of his Honor (the Judge of the Superior Court), and there must be a new trial.

DOUGLAS, J., concurring. I concur in the opinion of the Court that where the defendant is indicted for removal of the crop he may justify by showing payment, either actual or constructive, by a failure of consideration of the contract of the lease. The burden is on the defendant to show by a preponderance of the evidence satisfaction, either by payment or its equivalent. My reason for so holding is the hardship which might result to the tenant. It is practically impossible for the average tenant to give the bond required by law. Upon his failure to do so the landlord can take the entire crop,

STATE *v.* NEAL.

no matter how largely it may exceed the rent in value, upon giving bond, and hold it until the action is finally determined. He can appeal to the Superior Court, and thence to this Court. In the meantime, the tenant can starve, or subsist upon charity. Under such circumstances, if he uses a part of his crop, under the penalty of going to jail if he fails to show that he has fully satisfied all liens, I think he should have the opportunity of showing payment, or its equivalent.

CLARK, J., dissenting. The statute under which the defendant is indicted, Code, sec. 1759, prohibits any lessee or cropper to remove any part of the crop "without the consent of the lessor or his assignees, and without giving him or his agent five days' notice of such intended removal, and before *satisfying* all liens held by the lessor or his assignees on said crop." This statute, passed in 1876-'77, is a most important one to the agricultural interests of the State. Indeed there is not one probably whose preservation in its integrity is more important to our farmers, whether owning or renting land. It was passed after careful deliberation and the fullest consideration in 1876-'77, and, with a slight modification in 1883, has been retained, amid all mutations of parties during the quarter of a century since.

The defendant does not allege *payment.* That would be a single issue, and would at once, if found in his favor, be an acquittal. But he sets up not payment, but alleged damages for breach of contract by way of counter-claim and set-off. Those matters can not be a "satisfaction" of lessor's lien, unless they had been either agreed to by him, or adjudged in a civil action to be so applied. Till then they are merely counter-claims for unliquidated and unallowed damages, and can not be set up as a defence of "satisfaction" in a criminal proceeding. To permit this to be done would be to destroy the efficacy of the criminal proceeding which the General As-

sembly deemed essential for the protection of the land owners of the State, and which no succeeding General Assembly has thought it ought to impair or repeal. Section 1754 emphasizes this remedy by guaranteeing the landlord's lien till his rents and advances are *"paid."* Section 1756 further particularly points out the lessee's remedy when there is, as here, a controversy between him and the lessor. It is by application to a Justice of the Peace if the amount in controversy is under $200, or to the Superior Court if over that sum. If there is an appeal from the judgment, this section permits the lessee or cropper to retain and use the crop upon giving proper bond. If he fails to do so, the lessor can take the crop upon giving bond. If neither gives bond, the crop remains *in custodia legis,* and if perishable is to be sold and proceeds held by the Court to abide the result of the action. If the defendant had pursued that course, as required by the statute, this proceeding would not be pending. But to allow him to take the law into his hands, adjudge for himself that his counter-claim or set-off is good, and thus throw the statement of the account into a criminal action, would be contrary to the express language of the statute, and would deprive the lessor of the very protection the statute was enacted to give him, *i. e.,* the security of so much of the crop raised on his land as is equal to the rent unless the lessee or cropper (usually irresponsible pecuniarily) should give bond to abide the civil judgment upon the controverted matters.

In rejecting the evidence here offered by defendant to show damages for breach of contract to repair buildings and shortage in land agreed to be rented for a lump sum, there was no error, and none in the charge. *State v. Williams,* 106 N. C., 646. The possession of the landlord was not transferred to the lessee by sending the cotton to be ginned.

No error.

COOK, J. I concur in the dissenting opinion.