STATE *v.* LONGINO ET AL.

[67 South. 902.]

1. COURTS. *Acts prohibited by statute. Judicial interpretation. Change of decision. Ex post facto law. Cruel and unusual punishment.*
   Where under Code 1906, section 1169, providing that it shall be a criminal offense for the president, cashier, teller, etc., conducting the business of receiving on deposit money, etc., to receive any deposit, while knowing that the institution is insolvent, the statute was judicially declared not to apply to certain acts, but subsequently the ruling of the court was reversed, and such acts held a criminal offense under the statute, and between the two decisions defendant committed such acts. No conviction could be had under the statute in question for violations committed between the first and second decisions of the court, since the holding by the court as to whether a criminal statute is, or is not, applicable to a particular state of facts is within the spirit of the constitutional prohibition against the passage of *ex post facto* laws, the decision of a court in construing a statute, being as much a part of the law of the land as a legislative enactment, unlike their decision relating to the common law, which are mere evidence of the law.

2. SAME.
   This rule is confined strictly to a criminal case, that to convict a defendant of an offense committed after a decision of the courts holding a criminal statute not applicable to the facts, and before its reversal in a subsequent decision, would be to violate the constitutional provisions against the infliction of cruel and unusual punishment.

APPEAL from the circuit court of Lawrence county. HON. J. C. WARD, Special Judge.

A. T. Longino and others were indicted for a crime. A demurrer to the indictment was sustained and the state appeals.

Appellees were indicted under section 1169 of the Mississippi Code of 1906, the indictment charging that appellees were officers, agents, and employees, to wit,

president, cashier and directors of a banking institution, and that—

"being then and there engaged in conducting the business of receiving on deposit the money and other valuable things of other persons for the said Merchants' & Planters' Bank, which said bank was then and there wholly insolvent, and the said (appellees) agents, officers, and employees aforesaid then and there having good reason to believe that said bank was then and there insolvent, did then and there unlawfully and feloniously receive a deposit in said bank consisting of money, etc. . . . which was then and there received for deposit in the said bank from . . . a depositor, . . . and that said agents, officers, and employees did not then and there, or at any time prior thereto, inform said depositor that said bank was then and there insolvent."

Section 1169 of the Code of 1906 in as follows:

"If the president, manager, cashier, teller, assistant, clerk, or other employee or agent of any bank or broker's office or establishment conducting the business of receiving on deposit the money or other valuable things of such persons, shall remove or secrete or conceal the assets or effects of such establishment for the purpose of defrauding any of the creditors of the establishment, or shall receive any deposit knowing, or having a good reason to believe, the establishment to be insolvent, without informing the depositor of such condition, on conviction, he shall be imprisoned in the penitentary not longer than five years."

Appellees demurred to the indictment, and the demurrer was sustained, and the state appealed.

*Ross A. Collins,* Attorney-General, and *Geo. H. Ethridge,* Assistant Attorney-General, for the state.

I submit that the case of *Rawles et al.* v. *State,* 60 So. 782, 103 Miss. 807, constitutes the law of the case and is *res judicata* on this demurrer, because it is between

the same parties in the same case.  It is a little difficult to see how the learned trial judge found any basis or theory upon which to base his ruling sustaining the demurrer; but I presume he was impressed by the argument pressed in the brief for the appellee that the decision in the Traylor case, placing an erroneous construction upon the statute upon which the indictment was predicated, rendered all persons committing the acts denounced by the statute immune from prosecution where the acts were committed between the decision in the Traylor case and the time it was overruled in the Rawles case.  If that were a sound construction the court could not have reversed and remanded the *Rawles Case,* 60 So. 782, 103 Miss. 807, for the acts then passed on were committed between the decision in the Traylor case and that case.  The case of *State* v. *Taylor,* 64 So. 740, was likewise reversed and remanded for a new trial and the decision in the Rawles case upheld, and it was impossible to reverse and remand a case for trial when there was no offense to try.  Counsel for appellee has found two cases which uphold their contention, although in one of the cases (and the main case relied upon) none of the judges agreed on the law though they did agree on a common conclusion.  This makes the case of no weight as authority.  Besides, the decisions cited in support of their contention is against the great weight of authority on that subject.  To sustain the contention of the appellees the court would have to assume that the court is possessed of legislative powers, and that the last decision on such question is an amendment to the law, rather than an interpretation of the meaning of the law.  Under sections one and two of the Mississippi Constitution the courts cannot exercise any legislative power, the entire legislative power in this state being vested in the legislature, and the judicial department being expressly prohibited from exercising either executive or legislative power.  The

true theory is that when the court overrules a decision the law stands precisely as though the overruled decision had never been rendered. "Where a court of last resort changes a ruling, or overrules a decision, it is to be deemed that the law is not changed, but the court was mistaken in its former decision, and that the law is, and has remained as expounded in its last decision, unless contract rights have accrued under the former decision of *Town of Hardinsburg* v. *Cravens,* 47 N. E. 153, 148 Ind. 1; *Center Township* v. *State,* 49 N. E. 961, 150 Ind. 168; *McMaster* v. *Dyer,* 29 S. E. 1016, 44 W. Va. 644; *Byrum* v. *Henderson,* 51 N. E. 94, 151 Ind. 102; *Behannon* v. *Shelbyville Bank,* 63 S. W. 474, 23 Ky. L. Rep. 508; *Falcener* v. *Simmons,* 41 S. E. 193, 51 W. Va. 172; *Boyd* v. *State,* 53 Ala. 601; *Taliafero* v. *Barnett,* 47 Ark. 539; *In re Dunham,* Fed. Cas. No. 4, 146; *Lanier* v. *State,* 57 Miss. 102; Pierce, v. Pierce, 46 Ind. 86; *Bradshaw* v. *Duluth Imperial Mill Co.,* 52 Minn. 59, 53 N. W. 1066; *Y. & M. V. R. R. Co.* v. *Adams Rev. Agt.,* 28 So. 956, 77 Miss. 194, 315; Affirmed on appeal to United States supreme court, 180 U. S. 1, 45 L. Ed. 395. In 26 Am. & Eng. Ency. Law (2nd Ed.), 179, the rule is stated as follows: "The effect of overruling a decision and refusing to abide by the precedent there laid down is retrospective and makes the law at the time of the overruled decision as it is declared in the last decision," citing numerous authorities. On page 180 of the same volume and work under heading "In Criminal Cases" it is said: "The doctrine of *stare decisis* in criminal cases cannot be carried to the extent of allowing the violators of law a vested right in rules which have been erroneously sanctioned, and will not protect them in regard to a crime committed while the decision is not yet overruled." In the present case there is no hardship imposed upon any one for the act denounced by statute is wrong *per se* and would in the absence of a statute amount to a moral wrong.

*Wood Magee* and *Longino & Ricketts,* for appellees.

The indictment in this case charges that the deposit was received by defendants in the alleged insolvent bank on the 19th day of December, 1911, and the appeal of this case by the state presents to this court for decision only one question. Was there on December 19, 1911, any law of the state of Mississippi prohibiting the deposit under circumstances as charged and set out in the indictment in the case?

This identical question was not presented to nor decided by this court in the *Rawles case,* 103 Miss. 807. In the *Traylor case* decided on December 4, 1911, 100 Miss. 544, 56 So. 121, this court held that it was no violation of the law to receive deposits in a bank under circumstances as charged in the indictment involved in the instant case.

On November 11, 1912, the holding in the Traylor case was virtually overruled. See *Ware case,* 59 So. 854, and this ruling was later followed in the *Rawls case. State v. Rawls,* 103 Miss. 807. The legislature did not amend section 1169 of the Code till March 8, 1912. Laws of Miss., 1912, page 287.

Now, intermediate the decision of the Traylor case and the overruling of this case or the enactment of any amendments to the statute, section 1169 of the Code, that is, on the 19th day of December these appellees are charged with having committed the crime, to wit: receiving the deposit.

In other words the appellees are charged with committing a crime which the supreme court declared in the Traylor case was not in existence—charged with an act which the supreme court said was not criminal.

I therefore respectfully submit to the court that there is involved in this appeal a question of vital interest not only to every citizen of the state of Mississippi but also to this court whose judgments and decrees must be enforced as the law of the state as much so as legislative acts are to be enforced.

When the supreme judicial authority of the state speaks out upon a question, whether when construing a statute of the state or otherwise declaring the law, every citizen of the state has a right to rely and act upon that declaration; and when prosecuted he has a right to invoke that declaration in his behalf. It is true every man is presumed to know the law, but he is not presumed to know the law better than the supreme court of his state for the presumption is that he is presumed to know at best what the supreme authority, construing the law, says the law is. And in this case these appellees are presumed to know what the law was while the Traylor case stood as the law in the state.

So that I say respectfully that this is not a case of "carrying Coal to Newcastle" as suggested by the attorney-General in his brief for the state in this case, but is a case which calls for the careful consideration of the rights of appellees in this appeal.

On December 19, 1911, at the time the indictment charges the offense to have been committed, the statute, 1169, of the Code had been construed by this court; was at that time a part and parcel of the statute just the same as if this construction had been written originally into the statute at the time it was enacted by the legislature. This being the case no prosecution can be maintained under the indictment set out in the record. See 36 "Cyc." top of page 1144. Black's Law of Judicial Precedents, page 231.

In presenting the appellees' contention to this court I am unable to cite other or additional authorities than those cited in the able and admirable brief of Messers Longino and Ricketts who have already filed their brief in this case, but there is one authority cited by them to which I desire to call the court's especial attention to wit: *The State* v. *O'Neil*, reported in Annotated Cases 1912B, page 691, 147 Ia. 513; 126 N. W. 454.

In this case will be found a complete and exhaustive discussion of the question involved in the case at bar, together with a citation of numerous authorities supporting the action of the lower court in sustaining the demurrer to the indictment in this case.

Cook, J., delivered the opinion of the court.

This court in *Traylor's Case* 100 Miss. 544, 56 So. 521 decided that the act charged in the present case was not a violation of section 1169, Code 1906. Subsequently, this court, in *State* v. *Rawles,* 103 Miss. 807, 60 So. 782, overruled Traylor's Case, holding that the act which the indictment in the present case charges was a violation of the code section mentioned above. In the interim, the indictment charges that defendants in the present case did the acts which this court in the Traylor Case had decided did not come within the condemnation of the statute. The trial court sustained defendants' demurrer to the indictment, doubtless upon the theory that he was bound by the decision in Traylor's Case. So we have the question as to whether the decision in the Rawles Case is to have a prospective or a retroactive effect. In other words, after the decision of this court in the Rawles Case, will we consider Traylor's Case at all in the construction of the statute, in so far as the rights of the present defendants may be concerned?

We do not wish to be understood as announcing a general rule. We confine the rule herein announced strictly within the limits of this case. We are considering a change of decisions interpreting criminal statutes, and that alone.

The supreme court of Iowa, in *State* v. *O'Neil,* 147 Iowa, 513, 126 N. W. 454, 33 L. R. A. (N. S.) 788, Ann. Cas. 1913B, 691, discussed the precise question here presented. This case brought forth four opinions, all of which held that the defendant was not guilty; that he

was protected by the decision which was in force at the timee it was alleged he did the act charged against him, and that a subsequent decision, overruling the former decision, would not destroy his defense. The several judges writing opinions in the case referred to gave different reasons for their conclusions, but all agreed that to hold otherwise would be unjust. Quoting from the majority opinion, written by Judge McCLAIN, it is said:

"In criminal cases, where the life or liberty of an individual is involved on one side, and the enforcement of law in the interest of the public welfare on the other, no private right of contract or property being imperiled by liberality of construction, the courts go further than in civil cases to recognize the common judgment of humanity as to what is right and just, and they allow many exceptions to statutory definitions of what shall constitute a crime."

This seems to express the dominant thought running through all the opinions, but the reasons given for the exceptions to the general rule were widely different.

The concurring opinion of Chief Justice DEEMER, quoted this observation of the supreme court of the United States, in *Douglass* v. *Pike County,* 101 U. S. 677, 25 L. Ed. 968:

"The true rule is to give a change of judicial construction in respect to a statute the same effect in its operation on contracts and existing contract rights that would be given to a legislative amendment; that is to say, make it prospective, but not retroactive."

The learned judge, referring to this quotation from the supreme court of the United States, said:

"If this be the rule with reference to the interpretation of statutes in actions involving property or contract rights, and such seems to be the doctrine established by the weight of judicial decisions, there is the more reason for holding it applicable to criminal cases, particularly where the court has once held the criminal statute void

and of no effect, because contrary to some provision of the fundamental law."

We again quote from the opinion of the Chief Justice, as follows:

"I see no good reason for not holding that this case comes within the provision of section 21, of article 1, of the Bill of Rights, which prohibits the passage of *ex post facto* laws. An *ex post facto* law is one which makes an act innocent when done a crime. *State* v. *Squires,* 26 Iowa, 340. Strictly speaking, perhaps, this refers only to laws passed by the legislature, but there is every reason for holding that it also applies to a change of judicial decisions. Decisions of courts construing statutes or declaring them unconstitutional are as much a part of the law of the land as legislative enactments. They become a part of the body of the law itself, and are not merely the evidences thereof, as are decisions relating to the unwritten or common law."

This reasoning appeals to us as sound, and in entire accord with the judicial decisions touching this question. Another reason given by Chief Justice DEEMER for his concurrence in the conclusion of the court was thus expressed:

"I am very clearly of the opinion that no other basis is needed for the conclusion, which every one desires to reach in this case, than the constitutional provision against cruel and unusual punishment."

It occurs to us that the punishment of an act declared by the highest court of the state to be innocent, because the same court had seen fit to reverse its interpretation of a statute, would be the very refinement of cruelty; it is certainly unusual because no precedent can be found for its infliction; that it is unjust is perfectly obvious.

We think that a change of decisions involving the interpretation of criminal statutes should have a prospective effect. This rule seems to be the just and the most reasonable rule. This rule applies the same principle as

the constitutional prohibition of *ex post facto* legisla-
tion. It will prevent injustice and also prevent cruel
and unusual punishment of individuals entirely inno-
cent of any intention to violate the laws of the state.

The supreme court of North Carolina, in *State v. Bell,*
136 N. C. 674, 49 S. E. 163, reviewed its former decision
interpreting a criminal statute, and reached the conclu-
sion that the former decision was wrong in holding that
the act in question did not violate the statute. In the
case under review, the defendant was held to be not
guilty because the act done by him was innocent under
the former decision. The reason for its conclusion was
stated this way:

"While we hold the law to be as stated, we are em-
barrassed in applying this ruling to this case. It may be
that these defendants have acted upon the advice of
counsel based upon the decision of this court in *State v.
Neal,* 129 N. C. 692, 40 S. E. 205, *supra.* If so, to try
them by the law as herein announced would be an injus-
tice. While it is true that no man has a vested right in
a decision of the court, it is equally well settled that
where, in the construction of a contract or in declaring
the law respecting its validity, the court thereafter re-
verses its decision, contractual rights acquired by vir-
tue of the law as declared in the first opinion will not be
disturbed. We have diligently searched for authority
by which courts have been governed in cases such as the
one before us. We find nothing very satisfactory. In
view of the peculiar conditions with which we are deal-
ing, we have deemed it but just to the defendants; and
not at variance with any authority in this court, to or-
der a new trial, with the direction that the testimony of-
fered in this case, in so far as it is made admissible by
the ruling of this court in *State v. Neal,* be admitted. If
the defendants shall be able to establish their defense in
accordance with the ruling in Neal's Case they are enti-
tled to do so, but the construction now put upon the

statute will be applied to all future cases. While, as we have said, we find no authority directly in point, we think this course is sustained by what is said in Wells on *Stare Decisis* 566.    See also, *Township* v. *State,* 150 Ind. 168, 49 N. E. 961, 26 A. & E. Ency. 179; *In re Dunham,* 8 Fed. Cas. No. 4, 146, p. 37.''

*Ingersoll* v. *State,* 11 Ind. 464, and Endlich on Interpretation of Statutes, section 363, are authority for this holding.

The supreme court of the United States has uniformly held that a change of decision does not have the effect to impair contractual rights obtained while the changed decision was in force.

Our attention has not been directed to any judicial decision in conflict with our conclusions, and after much diligence in searching the books, we think it may be said that no such decision can be found.

The argument on behalf of the state is that when a decision is overruled, in legal contemplation, the decision never existed. This argument has been met and satisfactorily answered in the adjudicated cases. It is also said that every man is presumed to know the law, and no one can take the shelter under an erroneous decision of the highest court. This argument is, in our opinion, manifestly faulty. If the legal maxim has any application to a case like this, and is controlling, the maxim must be amended to read thus: ''Ignorance of the law excuses no man, except members of the supreme judicial tribunal of the state.''

The judgment of the trial court sustaining the demurrer to the indictment is affirmed and defendants are discharged.                                   *Affirmed.*