STATE OF HAWAI'I, Plaintiff–Appellee, v. LEE
IKEZAWA, Defendant–Appellant

NO. 15937

(CR. NO. 91–1405)

AUGUST 26, 1993

MOON, C.J., KLEIN, LEVINSON,
NAKAYAMA, AND RAMIL, JJ.

## OPINION OF THE COURT BY KLEIN, J.

Defendant–Appellant Lee Ikezawa appeals a circuit court order that denied his motion to dismiss pursuant to Hawai'i Rules of Penal Procedure (HRPP) 48(b)(1).[1]  Ikezawa was originally charged with third

---

[1] HRPP 48(b)(1) provides:

Except in the case of traffic offenses, the court shall, on motion of defendant, dismiss the charge, with or without prejudice in its discretion, if the trial is not commenced within 6 months from:

degree assault in violation of Hawai'i Revised Statutes (HRS) § 707–712 (1985) (first charge). This charge was subsequently dismissed without prejudice. A year later, he was charged with second degree assault in violation of HRS § 707–711 (Supp. 1992) (second charge) and convicted of the included offense of assault in the third degree. This appeal centers on two issues: 1) whether HRPP 48(c)(6)[2] excludes the time period between the dismissal of the first charge and Ikezawa's indictment on the second charge; and 2) whether *State v. Balauro*, 73 Haw. 70, 828 P.2d 267 (1992), can be applied retroactively to the facts of this case.

We hold that our decision in *State v. Stone*, 65 Haw. 308, 651 P.2d 485 (1982), applies in this case, and that Ikezawa justifiably relied on *Stone* when he filed his motion to dismiss. Furthermore, we hold that *Balauro*, which was decided after Ikezawa's trial, cannot be applied retroactively without serious prejudice to Ikezawa. Accordingly, we reverse the circuit court's order that denied Ikezawa's motion to dismiss and remand the case to the circuit court for a determination whether the charge should be dismissed with or without prejudice according to HRPP 48(b)(1).

---

(1) the date of arrest or of filing of the charge, whichever is sooner, on any offense based on the same conduct or arising from the same criminal episode for which the arrest or charge was made[.]

[2] HRPP 48(c) provides in pertinent part:

The following periods shall be excluded in computing the time for trial commencement: . . . .

(6) the period between a dismissal of the charge by the prosecutor to the time of arrest or filing of a new charge, whichever is sooner, for the same offense or an offense required to be joined with that offense[.]

## I. **Facts**

On March 23, 1990, Ikezawa was arrested and charged with third degree assault. On April 30, 1990, the circuit court granted the prosecution's motion to dismiss the charges without prejudice.

On June 12, 1991, a grand jury returned an indictment against Ikezawa for second degree assault;[3] trial was set for December 2, 1991. On August 30, 1991, Ikezawa moved to dismiss the charge pursuant to HRPP 48(b)(1), but the circuit court denied the motion on October 8, 1991. Trial began December 2, 1991 and Ikezawa was convicted of the lesser included offense of third degree assault.

Ikezawa now appeals the circuit court's denial of his motion to dismiss, contending that the six–month period within which trial must commence under HRPP 48(b)(1) had lapsed. He argues that pursuant to *Stone* and *State v. Holt*, 67 Haw. 246, 684 P.2d 971 (1984), where the original charge differs from the subsequent charge, the time period between the dismissal of the original charge and the filing of the new charge must be included in the six–month calculation. Ikezawa concedes that if *Balauro*, the case that overruled *Stone*, applies, the circuit court properly denied his motion to dismiss. According to Ikezawa, however, *Balauro* cannot be applied retroactively because such application would violate his due process rights under the Hawai'i and United States Constitutions. He complains that he relied on *Stone*, and if he had known that *Balauro* would be followed, he could have filed

---

[3] The charges arose out of a single incident involving an alleged assault by Ikezawa against his girlfriend.

his motion later when a HRPP 48(b)(1) dismissal would have been required.

## II. HRPP Rule 48
## A. Tolling the Time Period

The language of HRPP 48 is clear and unambiguous. Criminal charges are to be dismissed if a trial on those charges does not commence within six months from the time of the arrest or of filing of the charges, whichever is sooner. HRPP 48(b)(1). The time period is tolled when a charge is dismissed by the prosecutor and the same charge or a charge required to be joined with the original charge is subsequently brought. HRPP 48(c)(6). Accordingly, HRPP 48(c)(6) provides two instances where the time period between the dismissal of the original charge and the institution of a new charge is excluded from the critical six–month calculation: 1) where the prosecution recharges the same offense it dismissed earlier; and 2) where the prosecution recharges a different offense which nevertheless was required to be joined with the original charge.

The application of HRPP 48(c)(6) is obvious when the offense subsequently charged is the same as the offense originally charged. *See Holt, supra.* What constitutes an "offense required to be joined with that [original] offense," however, is less clear. HRPP 8(c)[4] establishes that charges shall be dismissed for failure to join them with

---

[4] HRPP 8(c), Failure to Join Related Offenses, provides:

(1) A defendant who has been tried for one offense may thereafter move to dismiss a charge in a subsequent trial *for any related offense, as defined in Rule 13(b)(1),* unless the related offense is one which was pending in court prior to the commencement of the first trial. The motion to dismiss must be made prior to the second trial, and shall be granted unless the court determines that because the

any "related offense." Thus, pursuant to HRPP 8(c), any "related offense" is "required to be joined." HRPP 13(b)(1) provides that, "[t]wo or more offenses are related . . . if they are within the jurisdiction of a single court and are based on the same conduct or arise from the same episode." HRS § 701–109(2) similarly defines offenses required to be joined.[5]

Therefore, by the plain language of HRPP 8(c) and 13(b)(1), offenses are "required to be joined" if they are within the jurisdiction of a single court and are based upon the same conduct or arise from the same criminal episode.[6] Thus, if an initial charge is dismissed without prejudice and the defendant is later charged with a different offense, albeit one based upon the same conduct or arising from the same criminal episode, then the later offense is one that was "required to be joined" with the original offense, and the time period between dismissal of the original charge and the filing of a new charge is tolled, pursuant to HRPP 48(c)(6). In the instant case, HRPP 48(c)(6) requires that the time period between the

---

prosecutor did not have sufficient evidence to warrant trying the offense charged in the second trial at the time of the first trial, or for some other reason, the ends of justice would be defeated if the motion were granted.

HRPP Rule 8(c) (emphasis added).

[5] HRS § 701–109(2) (1985) provides:

[A] defendant shall not be subject to separate trials for multiple offenses based on the same conduct or arising from the same episode, if such offenses are known to the appropriate prosecuting officer at the time of the commencement of the first trial and are within the jurisdiction of a single court.

[6] See *State v. Ferraro*, 8 Haw. App. 284, 800 P.2d 623 (1990), and *State v. Carroll*, 63 Haw. 345, 627 P.2d 776 (1981), for a discussion and definitions of "conduct" and "episode".

dismissal of the original third degree assault charge and the subsequent second degree assault charge be excluded from the critical six–month calculation because both offenses were "required to be joined," having arisen from the same episode.

### B. **The Stone and Holt Decisions**

Ikezawa argues that the analysis of HRPP 48(c)(6) provided in *Stone* would preclude the exclusion, under HRPP 48(c), of the time between the dismissal of the first charge and his subsequent indictment on the second charge. In *Stone*, an original charge of first degree assault was dismissed without prejudice on the prosecution's motion. **Stone**, 65 Haw. at 308, 651 P.2d at 486. Eighteen months later, the defendant was indicted for first degree *attempted* assault. *Id.* The defendant successfully moved to dismiss the charge pursuant to HRPP 48(b)(1). *Id.* In affirming the dismissal, this court stated that the six–month period had elapsed and that neither of the HRPP 48(c) exclusions were applicable. *Id.* at 309, 651 P.2d at 486.

In *Holt*, an initial charge was dismissed without prejudice on the prosecutor's motion. **Holt**, 67 Haw. at 246, 684 P.2d at 971. Later, Holt was indicted on *exactly* the same charge, and the trial court granted Holt a dismissal pursuant to HRPP 48(b)(1). *Id.* at 246, 684 P.2d at 971–72. In reversing, this court stated that HRPP 48(c)(6) tolled the time period between the dismissal of the original charge and the new indictment. *Id.* The court distinguished *Stone*, stating that Stone had successfully argued the inapplicability of HRPP 48(c)(6) because the initial charge and the later charge were different. *Id.* at 246–47, 684 P.2d at 972. We noted that in *Stone*, "[the] difference [in the charges] was decisive." *Id.* at 247, 684 P.2d at 972.

Together, *Stone* and *Holt* established a clear, although erroneous, interpretation of HRPP 48(c)(6): the time period between the dismissal of a charge and the institution of a new charge was excluded only when the charges were the same. These opinions ignored the plain language of HRPP 48(c)(6) that permits tolling of the six–month period when the later charge is "required to be joined with [the original] offense."

According to the holdings of *Stone* and *Holt*, Ikezawa was entitled to a HRPP 48 dismissal of the refiled assault charge because the second degree assault charge was clearly "different" from the third degree assault charge. Therefore, *Stone* dictated the dismissal of the subsequent charge.

Ikezawa relied on *Stone* and *Holt* in bringing his motion for dismissal on August 30, 1991.[7] Had Ikezawa foreseen that the circuit court would misapply the case law and exclude the hiatus between the dismissal of the first charge and the filing of the second charge, he could have waited until November 4, 1991, to file his motion to dismiss. By relying on *Stone* and filing his motion when he did, he created a 39–day exclusion under

---

[7] In Ikezawa's memorandum in support of his motion to dismiss on Rule 48 grounds, he cited *Stone*. Furthermore, at the hearing, his attorney stated:

> I believe the (sic) State versus Stone would show that since this is a different offense charged, that subsection C6 would not be triggered in any respect. Also, in State versus Holt, I think the Court clarified what was indicated in State versus Stone in that the crucial aspect of that case, as to whether or not it will be excluded or not, was that it was a different offense [in] State versus Stone. While [in] State versus Holt, it was the same offense.

10/8/91 transcript at 5.

HRPP 48(c)(1)[8] that extended the last day of the critical period beyond the December 2, 1991 trial date. Thus, due to his reliance on established case law, Ikezawa lost the opportunity to have the pending charge dismissed under HRPP 48(b)(1).

As we have noted, although the language of HRPP 48 is clear and unambiguous, this court gave it an erroneous interpretation in *Stone* and *Holt*. In applying HRPP 48(b)(1) to his factual situation, Ikezawa justifiably relied upon case law that established a simple test regarding the exclusion of time periods pursuant to HRPP 48(c)(6). Because the later charge was different from the initial charge, Ikezawa, relying on *Stone*, correctly concluded that the exclusion was inapplicable and the critical six–month period had expired.

## C. **The Balauro Decision**

We considered *Balauro* on *certiorari* from the Inter-mediate Court of Appeals (ICA). **Balauro**, 73 Haw. at 71, 828 P.2d at 267. In a memo opinion, the ICA "perceived a divergence between our holding in [*Stone*] and [HRPP] 48." *Id.* In *Balauro*, the initial charge of gambling was dismissed, and one year later, the defendant was indicted for promoting gambling and possession of a gambling device. *Id.* at 72, 828 P.2d at 268. Though different, these offenses were required to be joined because they arose

---

[8] HRPP 48(c) provides in pertinent part:

The following periods shall be excluded in computing the time for trial commencement:

(1) periods of delay resulting from collateral or other proceed-ings concerning the defendant, including but not limited to . . . hearings on pretrial motions.

from the same episode. *Id.* at 73, 828 P.2d at 268. *See* HRPP 13(b). Nevertheless, following our precedent, the ICA affirmed the circuit court's denial of Balauro's motion to dismiss.[9]

In *Balauro*, we recognized that *Stone* and *Holt* ignored the provision of HRPP 48(c)(6) that excludes the time in an instance when the later charge is required to be joined with the original charge. *Balauro* thus overruled *Stone* by holding that the critical six-month period is tolled when the later charge is the same as *or is required to be joined with the original charge.* *Id.* at 73, 828 P.2d at 268.[10]

## III. **Retroactive Application**

As Ikezawa concedes, were *Balauro* given retroactive application, HRPP 48(c)(6) would exclude the time between the dismissal of the third degree assault charge and the indictment for second degree assault. Thus, his motion would have been premature and, accordingly, would have been properly denied. The issue, therefore, is whether *Balauro's* overruling of *Stone* can be given retroactive application.

---

[9] In *State v. Balauro*, the ICA, in its memo opinion, recognized the error of *Stone*, but also recognized it as precedent, stating that "[w]ere it not for *Stone*, we would hold that the period in question was excludable. . . . However, we are bound . . . to follow the law announced by the supreme court in *Stone*."

[10] The statement in *Balauro* "that Rule 48(c)(6) excludes the period of time when no charges that *could* have been joined . . . are pending . . . ," *Balauro*, at 71, 828 P.2d at 267 (emphasis added), refers to charges that were *required to be joined* as stated in Rule 48(c)(6). *Balauro* must not be understood to mean that any charge that possibly could have been joined triggers the time exclusion.

Although judicial decisions are assumed to apply retroactively, such application is not automatic. As we have stated, "The Constitution neither prohibits nor requires retrospective effect. . . . Free to apply decisions with or without retroactivity, the Court's task is to exercise its discretion, weighing the merits and demerits of retroactive application of the particular rule." *State v. Santiago*, 53 Haw. 254, 268, 492 P.2d 657, 665 (1971) (citations omitted). In *Santiago*, we held that *State v. Cuevas*, 53 Haw. 110, 488 P.2d 322 (1971), which found a certain jury instruction invalid, would be applied retroactively. We noted the "curious lacework" of United States Supreme Court decisions regarding retroactivity and recognized that:

> In making [those] determination[s], the [United States Supreme] court (sic) has given consideration to three factors: (a) the purpose to be served by the newly announced rule, (b) the extent of reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.

*Santiago*, 53 Haw. at 268–69, 492 P.2d at 665–66 (citations omitted). In another case, we stated that "[f]actors to be considered include: Prior history of the rule in question, its purpose and effect, and whether retroactive operation will further or retard its operation; interests in the administration of justice and the integrity of the judicial process." *Russell v. Blackwell*, 53 Haw. 274, 277, 492 P.2d 953, 956 (1972).

Implicit in the factors described in *Santiago* and *Russell* is the concept of fairness. Thus, where substantial prejudice results from the retrospective application of

new legal principles to a given set of facts, the inequity may be avoided by giving the guiding principles prospective application only.[11]

*Balauro* establishes a new principle of law because it overrules our clear precedent as set forth in *Stone*. Thus, to determine whether *Balauro* will be applied retroactively, we examine *Balauro* and the instant case within the *Santiago* framework. First, we consider the purpose

---

[11] The United States Supreme Court has examined the issue of fairness and inequity in various cases. In *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971), in determining retroactivity, the Court considered whether: 1) the decision establishes a new principle of law; 2) retroactivity furthers or retards the purpose and effect of the rule in question; and 3) retroactive application produces substantially inequitable results. *Id.* at 106–07. In *Bouie v. City of Columbia*, 378 U.S. 347 (1964), the Court reversed a trespass conviction because it rested on an unexpected construction of a statute by the state supreme court. The Court noted, "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law." *Bouie*, 378 U.S. at 353–54. In *Rabe v. Washington*, 405 U.S. 313 (1972), the Court reversed a conviction based on an unforeseeable judicial construction of the statute. The Court stressed that affected citizens lacked fair notice that the statute would be applied in such a manner. In *Marks v. United States*, 430 U.S. 188 (1977), the Court refused to retroactively apply its decision in *Miller v. California*, 413 U.S. 15 (1973), stating that Marks had no fair warning that he would be subjected to the new standards.

Other states have followed a similar pattern of reasoning and analysis when examining the issue of the retroactive application of judicial decisions. *See, e.g., State v. Longino*, 109 Miss. 125, 67 So. 902 (1915); *State v. Jones*, 44 N.M. 623, 107 P.2d 324 (1940) ("Or, shall the defendants' acts and conduct be judged by the then unreversed decision which stood as the best evidence of what the law was at the time the acts . . . took place."); *Cox v. Haworth*, 304 N.C. 571, 284 S.E.2d 322 (1981); *State v. Bell*, 136 N.C. 674, 49 S.E. 163 (1904) ("It may be that these defendants have acted upon the advice of counsel based upon the decision of this court in *State v. Neal*, [129 N.C. 692, 40 S.E. 205 (1901)]. If so, to try them by the law as herein announced would be an injustice.").

served by the *Balauro* decision. The purpose of HRPP 48 is to insure a defendant's right to a speedy trial by requiring that the trial start within six months of the charge or arrest. The purpose of the HRPP 48(c) exclusions is to expand the critical six–month period within which trial must commence in the interest of fairness to both the prosecution and defense. A retroactive application of *Balauro* furthers the purpose of the HRPP 48(c)(6) exclusion by correctly interpreting the rule and tolling the six month limitation where the reprosecution occurs after the dismissal of an earlier charge.

Second, we examine Ikezawa's reliance on the *Stone* rule. Because he correctly looked to *Stone* to determine the timing of his motion to dismiss, Ikezawa's reliance was substantial. Ikezawa could not have foreseen at the time he filed his motion that HRPP 48 would be applied differently by the trial court. Furthermore, had he known that the *Balauro* rule would be applied, he could have filed a successful HRPP 48 motion at a later time.

Third, we look at the effect retroactivity would have on the administration of justice in the instant case. Given the timing of Ikezawa's motion, *Stone* required a dismissal of the charge while the retroactive application of *Balauro* precludes dismissal. Furthermore, Ikezawa could have received a dismissal under the *Balauro* rule if he had delayed the filing of his motion. Thus, he was prejudiced by his reliance on *Stone*[12] and by the fact that he could have received a dismissal under either rule.

---

[12] Without such reliance, a defendant would simply be arguing that *Balauro* is wrong and that *Stone* should be the prevailing rule. *Stone* clearly misinterprets HRPP Rule 48. Here, Ikezawa is not arguing that *Stone* is correct, but instead argues that his reliance on *Stone* prevents the holding in *Balauro* from being applied in this case.

Ikezawa simply acted according to the rule as it was interpreted at the time. Retroactive application of *Balauro* would, therefore, produce a substantially inequitable result. The reliance by and prejudice to Ikezawa preclude retroactive application of *Balauro*. Finally, applying *Balauro* prospectively would not place a heavy burden on the judicial system, because few cases, if any, present a factually similar situation. Thus, we decline to apply *Balauro* retroactively.

## IV. **Conclusion**

*Stone* and *Holt* definitively interpreted HRPP 48(c)(6) for nearly ten years before Ikezawa justifiably relied on them in filing his motion to dismiss. Under *Stone*, Ikezawa was entitled to a dismissal. *Balauro*, however, overruled *Stone* and, if given retroactive application, would preclude Ikezawa from receiving a HRPP 48 dismissal. The abrupt change in settled case law, however, was not foreshadowed, and Ikezawa could not have anticipated that a new interpretation was forthcoming.

We hold that the inequity and prejudice of retroactively applying *Balauro* in this case outweigh the fact that *Balauro* properly interpreted the language of HRPP 48(c)(6).

Accordingly, we reverse the order of the circuit court denying Ikezawa's HRPP 48 motion to dismiss and remand for a determination whether the dismissal should be granted with or without prejudice.

On the briefs:

*Edward K. Harada*, Deputy Public Defender, for defendant–appellant.

*Michael J. Park*, Deputy Prosecuting Attorney, for plaintiff–appellee.