**Electronically Filed
Supreme Court
SCWC-29725
21-DEC-2010
03:41 PM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

DAVID GARCIA, aka Howard Garcia,
Petitioner/Petitioner-Appellant

vs.

STATE OF HAWAIʻI, Respondent/Respondent-Appellee

NO. SCWC-29725

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(S.P.P. NO. 08-1-0012 (CR. NO. 96-1330))

DECEMBER 21, 2010

RECKTENWALD, C.J., NAKAYAMA, ACOBA, AND DUFFY, JJ.,
AND CIRCUIT JUDGE NACINO, ASSIGNED DUE TO A VACANCY

OPINION OF THE COURT BY ACOBA, J.

We hold that the recalculation by the Hawaiʻi Paroling

Authority (HPA), of credit for pre-sentence detention

(presentence credit) of Petitioner/Petitioner-Appellant David

Garcia, aka Howard Garcia (Petitioner), pursuant to State v.

Tauiliili, 96 Hawaiʻi 195, 200, 29 P.3d 914, 919 (2001), that extended the earliest date at which Petitioner was eligible for release, did not violate (1) the Ex Post Facto Clause of the United States Constitution; (2) due process under the United States Constitution or the Hawaiʻi Constitution; or (3) principles regarding the retroactive application of judicial decisions espoused by this court.  We accepted Petitioner's application for writ of certiorari (Application) in this case because (1) similar issues regarding the retroactive application of Tauiliili, have been previously raised to and rejected by this court,[1] (2) there is no governing authoritative case regarding the retroactive application of Tauiliili inasmuch as the ICA's judgments in that regard have been by way of summary disposition orders, see Killion, 2009 WL 484411, at *1, and Garcia v. State, No. 29725, 2010 WL 2513357, at *1 (App. Jun. 23, 2010) (SDO), and (3) Tauiliili did not discuss whether applying that decision retroactively would violate the prohibition against ex post facto laws, due process, or principles regarding the retroactive application of judicial decisions, as espoused by this court.  We affirm the judgment of the ICA, see Garcia, 2010 WL 2513357, at *1, on the grounds set forth herein.

_____

[1]    In that case, this court affirmed the decision of the Intermediate Court of Appeals (ICA) in Killion v. State, No. 29077, 2009 WL 484411, at *1 (App. Feb. 24, 2009) (SDO).  Respondent/Respondent-Appellee State of Hawaiʻi (Respondent) cited to Killion in its opening brief to the ICA.

I.

A.

The following essential matters, some verbatim, are from the record and the submissions of the parties.

Hawai'i Administrative Rules (HAR) § 17-1204-17,[2] promulgated in 1985, provided:

> 17-1204-17 Credit application towards minimum sentence expiration date for sentenced felons.
>
> (a)     Presentence credit accumulated by a sentenced felon offender <u>shall be deducted from the offender's minimum sentence expiration date</u> set by the paroling authority.
>
> (b)     Upon the establishment of an adjusted minimum sentence expiration date, the paroling authority shall forward a facsimile copy of the expiration date to the corrections division office having custodial jurisdiction over the offender and the agency.
>
> (c)     <u>The expiration date shall be the earliest date when the sentenced felon offender can be released from a correctional facility</u> prior to and upon further action by the paroling authority.

(Emphases added.)[3]  On October 21, 1997, Petitioner pled guilty to five counts of Robbery in the Second Degree pursuant to a plea agreement with Respondent.[4]

---

[2]     HAR 17-1204-17 was repealed on April 15, 2000.

[3]     As discussed <u>infra</u>, HAR § 17-1204-17 indicated that presentence credits shall be applied only once against the aggregate minimum terms, where consecutive terms have been imposed.  However, in his Application, Petitioner notes that at the hearing on his petition, he testified that based on his own research as a "'jailhouse lawyer,'" prior to <u>Tauiliili</u>, the HPA had a practice of applying presentence credits against each minimum term, not against the aggregate.

[4]     The plea agreement provided in relevant part as follows:

> 1.  [Petitioner] to plead guilty to a reduced charge of Robbery 2d Degree under counts II, III, and IV.
>
> 2.  [Petitioner] to plead guilty as charged to Robbery 2d Degree under Counts I and V.
>
> 3.  <u>In consideration of the substantial concessions of</u>
> (continued...)

3

On March 3, 1998, Petitioner was sentenced by the trial court (sentencing court),[5] in accordance with the plea agreement, as follows: (1) an indeterminate term of ten years with a mandatory minimum term of three years and four months for count I; (2) an indeterminate term of ten years for each of the four remaining counts (counts II-V), to run concurrently with each other; (3) the sentence for count I to run consecutively to the

_____

[4](...continued)

    a)     the reduction in charge from Robbery 1st Degree to Robbery 2d Degree under counts II, III, and IV

    b)     [Respondent's] relinquishing of the allegation of [Petitioner's] use of a handgun under counts II, III, and IV, and

    c)     [Petitioner's] being subject to continuing prosecution under counts II, III, and IV for Robbery 1st should the instant plea offer not be accepted,

[Petitioner] agrees to open ten year term[s] on all counts, with a minimum term of ten years under count I. Said minimum term shall not be subject to early release, furlough, or parole.

    4. <u>Open term of ten years under count I to run consecutively with [sic] open terms of ten years under counts II, III, IV, and V.</u>

    5. Open terms of ten years under counts II, III, IV, and V to run concurrently with each other.

    6. [Petitioner] agrees to a mandatory minimum term of three years, four months as a repeat offender under count I.

    7. [Respondent] and [the] court agree to not seek any enhanced or extended sentencing, or consecutive sentencing, except as agreed to herein.

    8. <u>Parties stipulate that sentence under the subject criminal number be concurrent with any sentence [Petitioner] is currently serving.</u>

    9. <u>[Petitioner is] free to argue at sentencing for credit for time served dating from the date of his initial arrest on October 22, 1995.</u>

[RA at 26] (Emphases added.)

    [5]     The Honorable Victoria S. Marks presided.

concurrent sentences for the four remaining counts; and

(4) credit for presentence detention beginning October 22, 1995.

On October 12, 1998, the HPA issued a Notice and Order Fixing Minimum Term(s) of Imprisonment, setting the minimum term for each count at seven years. The Notice listed October 22, 2002, as the earliest date of release for counts II through V, and June 12, 2007, for count I. It is apparent that Petitioner received presentence credit under each of the five counts.

Then, on August 9, 2001, this court held in Tauiliili, 96 Hawaiʻi at 200, 29 P.3d at 919, that pursuant to Hawaiʻi Revised Statutes (HRS) § 706-671,[6] where consecutive sentences are imposed, the defendant is entitled to presentence credit against only the aggregate of his or her consecutive terms; not against each of his or her consecutive terms. Thereafter, the Department of Public Safety (DPS) promulgated a written policy, effective January 1, 2005, adopting the Tauiliili "methodology" for computing presentence credit for consecutive sentences

---

[6] HRS § 706-671, as was in effect at the time Tauiliili was decided, provided in pertinent part:

(1) When a defendant who is sentenced to imprisonment has previously been detained in any State or local correctional or other institution following the defendant's arrest for the crime for which sentence is imposed, such period of detention following the defendant's arrest shall be deducted from the minimum and maximum terms of such sentence. The officer having custody of the defendant shall furnish a certificate to the court at the time of sentence, showing the length of such detention of the defendant prior to sentence in any State or local correctional or other institution, and the certificate shall be annexed to the official records of the defendant's commitment.

Tauiliili, 96 Hawaiʻi at 198, 29 P.3d at 917 (emphasis added).

(Policy).[7]  On April 18, 2007, the HPA issued a second Notice and Order Fixing Minimum Term(s) of Imprisonment, indicating that pursuant to this court's holding in Tauiliili, Petitioner's earliest dates of release had been recalulated and set at October 20, 2003 for counts II-V, and at October 18, 2009 for count I.

B.

On January 10, 2008, Petitioner filed a Motion for Clarification of Illegal Sentence or in the Alternative, to Correct Illegal Sentence (Petition).  In his Petition, Petitioner argued that the retroactive application of Tauiliili to recalculate his minimum sentences (1) violated the Ex Post Facto Clause of the United States Constitution; (2) contravened this court's decision in State v. Ikezawa, 75 Haw. 210, 220-21, 857 P.2d 593, 598 (1993), regarding the retroactivity of judicial decisions; and (3) breached the Due Process Clause of the United States Constitution inasmuch as (a) the sentencing court and Petitioner assumed that Petitioner's presentence credit would be applied to both of his consecutive terms, (b) HRS § 706-671(1) states that with regard to presentence detention, "[s]uch period of detention shall be deducted from the minimum and maximum

_____

[7]    The Policy promulgated by DPS states that the Policy (1) is "New"; (2) is to be effective as of January 1, 2005; and (3) regards "Sentence Computation[.]"  Under a section entitled "Method of Computation," the Policy states in relevant part that "[p]ursuant to the Tauiliili case, any multiple sentences imposed at the same time will be computed with presentence credit applied only to the aggregate sentence, and not to each of the remaining sentences."  The Policy further states, "This policy applies to all [DPS] personnel. All prior policies, procedures, and practices are hereby superceded to the extent they are inconsistent with this [P]olicy."  (Emphases added.)

terms" and that the use of the word "term" in the plural suggested that presentence credit was applicable to each consecutive term, and (c) from his own research and examination of other inmates' cases, he had determined that HPA had a practice of applying presentence credit to each of a defendant's consecutive terms.

On March 18, 2009, the circuit court of the first circuit (the court)[8] filed its Findings of Fact, Conclusions of Law and Order Denying Petitioner's January 10, 2008 Nonconforming Petition for Post-Conviction Relief denying Petitioner's Motion. The court concluded that since Tauiliili did not change the law but merely interpreted existing law, recomputation of Petitioner's minimum sentences did not violate the Ex Post Facto Clause or due process. Additionally, the court concluded that neither the plea agreement nor the transcript of Petitioner's sentencing hearing demonstrated that Petitioner was to receive presentence credit on both of his consecutive terms.

C.

On appeal to the ICA, Petitioner reiterated the same arguments raised before the court. The ICA affirmed the court pursuant to a Summary Disposition Order (SDO) filed on June 23, 2010.[9] See Garcia, 2010 WL 2513357, at *3.

---

[8]  The Honorable Virginia L. Crandall presided.

[9]  The SDO was filed by Chief Judge Craig H. Nakamura and Associate Judges Daniel R. Foley and Katherine G. Leonard.

7

1.

With respect to Petitioner's Ex Post Facto Clause argument, the ICA acknowledged that "'[r]etroactive application of a law that imposes a greater punishment than the law in effect when the crime was committed is forbidden by the Ex Post Facto [C]lause[] of the Constitution.'" Id. (quoting Davis v. Moore, 772 A.2d 204, 215-16 (D.C. Cir. 2001) (footnote omitted)). The ICA stated, however, that "'[t]he United States Supreme Court has made it clear that the constitutional prohibition against ex post facto measures applies only to legislative enactments.'" Id. (quoting State v. Jess, 117 Hawai'i 381, 407, 184 P.3d 133, 159 (2008)). According to the ICA, HRS § 706-671 "did not change its statutory language or any prior ruling on its effect" since it was first enacted, nor "since [Petitioner] committed his offenses[.]" Id. Thus, the ICA concluded that "there [was] no ex post facto prohibition against applying Tauiliili to [Petitioner's] sentence." Id.

2.

The ICA did not specifically address Respondent's arguments with respect to the retroactive application of judicial decisions under Ikezawa but, rather, addressed Respondent's argument in that regard as a matter of due process. According to the ICA, "[t]he test for analyzing whether a newly announced judicial doctrine can apply retroactively is grounded in concepts of notice and foreseeability." Id. It further observed that

8

"'[a]n unforseeable interpretation of a statute that increases punishment, if applied retroactively, could violate due process.'"  Id. (quoting Campbell v. United States Parole Comm'n, 563 F. Supp. 2d 23, 26 (D.C. Cir. 2008)) (internal citations omitted).

As to foreseeability, the ICA noted that in accordance with HAR § 17-1204-17, Petitioner's presentence credit was to be applied to his first seven-year minimum term and not to each minimum term.  Id.  Because "HAR § 17-1204-17 was promulgated in 1985[,]" the ICA maintained that "it was not unexpected that HRS § 706-671 would be interpreted to mean that presentence credit could only be applied once to the aggregate minimum sentence." Id.  The ICA further reasoned that "Tauiliili was not a reformation or departure from an existing HPA rule[, but, r]ather, it was consistent with HPA's longstanding practice of only applying presentence credit once to a minimum sentence expiration date."  Id.

The ICA also explained that the "HPA's application of Tauiliili to [Petitioner] was procedural in nature because the application was to correct HPA's prior misapplication of presentence credit in order to conform to the law as it existed prior to and after Tauiliili."  Id.  The ICA held that, in sum, application of Tauilili did not violate Petitioner's due process rights under the Hawaiʻi or United States Constitutions.  Id.

9

(citing United States Parole Comm'n v. Noble, 693 A.2d 1084 (D.C. 1997), and Davis, 772 A.2d at 204).

3.

Finally, with respect to Petitioner's argument that Petitioner and the sentencing court assumed that the presentence credit would apply to both of his consecutive terms, the ICA decided that "nothing in the transcript or [Petitioner's] plea agreement [] indicate[d] that the parties agreed that [Petitioner] would receive credit for the detention time for each count." Id. at *3. On October 13, 2010, Petitioner filed his Application urging this court to review the decision of the ICA.

II.

Petitioner presents the following questions in his Application:

> A.   Whether the ICA erred in concluding that recalculation of [Petitioner's] detention credit pursuant to [Tauiliili] . . . did not violate the ex post facto clause of the United States Constitution.
> B.   Whether the ICA erred in concluding that [Tauiliili] . . . was properly applied retroactively in the recalculation of [Petitioner's] detention credit.
> C.   Whether the ICA erred in concluding that recalculation of [Petitioner's] detention credit pursuant to [Tauiliili] . . . did not violate due process.

(Emphases added.)   (Some capitalization omitted.)

III.

A.

With respect to his first question regarding the Ex Post Facto Clause, Petitioner maintains that the Clause was violated by adoption of the Policy. He urges that the Policy "should be accorded the force and effect of law" because (1) HRS

10

§ 353-65 (Supp. 2003)[10] allows the HPA "to establish rules that have 'the force and effect of law'" and (2) "[g]enerally, administrative rules and regulations promulgated pursuant to statutory authority have the force and effect of law."  (Citing State v. Kimball, 54 Haw. 83, 503 P.2d 176 (1972).)  In further support of the foregoing proposition, Petitioner points to a line of cases from other jurisdictions, arguing that the cases conclude administrative rules are "law."  Petitioner additionally asserts that because the ICA apparently accorded HAR § 17-1204-17 the status of law, the Policy should likewise be considered "law."

### B.

With respect to the second question presented, Petitioner maintains that Ikezawa sets forth the controlling doctrine regarding the retroactive application of judicial decisions.  According to Petitioner, Ikezawa paid "great attention to the question of whether retroactive application [would] undermine the integrity of the judicial process, cause substantial unfairness, and cause an inequitable result."  Petitioner asserts he was substantially prejudiced by the

---

[10]    HRS § 353-65 provides in pertinent part:

> The [HPA] may establish rules, with the approval of the governor and the director of public safety not inconsistent with this part, under which any prisoner may be paroled but shall remain, while on parole, in the legal custody and under the control of the paroling authority, and be subject, at any time until the expiration of the term for which the prisoner was sentenced, to be taken back within the enclosure of the prison. The rules shall have the force and effect of law.

11

retroactive application of <u>Tauiliili</u> inasmuch as its application has "lengthened his minimum term by about two years and two months." He urges that where, as here, "substantial prejudice results from the retrospective application of new law principles to a given set of facts, the inequity may be avoided by giving guiding principles prospective application only."[11]

### C.

As indicated, the ICA couched its due process and retroactivity analyses, partially in terms of whether the <u>Tauiliili</u> decision was unexpected in the context of prior law. Thus, in connection with the third question, Petitioner argues that the ICA was mistaken. Initially, he observes that HAR § 17-1204-17 was not cited to by either party or the court, and "was not and has not been judicially noticed."[12]

Next, he contends that the holding of <u>Tauiliili</u> was indeed unexpected. He points out that he "sought leave [from the court] to question the HPA administrator as to whether" it was HPA's "prevailing practice [] to deduct presentence credit from each consecutive term." According to Petitioner, that motion was denied because "[Respondent] did not dispute th[e] 'practice' of the imposition of dual credit until that practice was changed

---

[11] Respondent did not specifically address the foregoing arguments in its Answering Brief to the ICA.

[12] Contrary to Petitioner's assertion, HAR § 17-1204-17 was raised by Respondent in its Answering Brief to the ICA; hence, this assertion need not be addressed further.

post-<u>Tauiliili</u>."  He maintains, then, that the ICA's suggestion that <u>Tauiliili</u> was "consistent with HPA's long standing practice of only applying presentence credit once" is based on a "misapprehension of the evidentiary record" and "raises a genuine question as to whether [Petitioner] received a fair review before the ICA[.]"  Petitioner observes that, in fact, the ICA referred to HPA's "prior misapplication" of the presentence credit which, according to Petitioner, undermines the ICA's own conclusion regarding "HPA's mythical 'longstanding practice' of applying credit once."

Also, Petitioner asserts that <u>Noble</u>, which was relied upon by the ICA in support of its conclusion that Petitioner's due process rights were not violated, is distinguishable.  According to Petitioner, in that case, the defendants were suing under a disparate treatment theory where the United States Parole Commission was interpreting the Good Time Credits Act differently from the District of Columbia Department of Corrections.  He contends that in those cases, the defendants "had much weaker claims to lack of notice" because the good time credits were being applied uniformly everywhere except in the District of Columbia.  Petitioner asserts that here, the due process claim is grounded in his "lack of notice and foreseeability" of the change in HPA's "monolithic [] practices."

Lastly, Petitioner declares that a "fair reading" of the plea agreement and transcript supports the conclusion that

the parties and the sentencing court intended for the presentence credit to apply to both of his consecutive sentences. He apparently argues that he had a due process right in the performance of the plea agreement.

IV.

This court's decision in Tauiliili is central to the instant case. In that case, Tauiliili had pled guilty to three separate counts and had been sentenced by the trial court "to 10 years' indeterminate imprisonment for Count I, 10 years' indeterminate imprisonment for Count II, and 5 years' indeterminate imprisonment for Count III." Tauiliili, 96 Hawaiʻi at 197, 29 P.3d at 916. The two ten-year sentences for Counts I and II were to "run concurrently and the sentence for Count III [was] to run consecutively to the sentences for Counts I and II." Id. Tauiliili subsequently filed a motion seeking an order granting presentence credit for time served. Id. He requested that his 853 days of presentence detention be credited against each of his consecutive sentences. The trial court entered an order granting Tauiliili's motion in part and denying it in part. Id.

The trial court agreed that Tauiliili was entitled to presentence credit, but determined that "the legislative purpose of HRS § 706-671 is to put a defendant who has been incarcerated presentence in the same position that a defendant would be in if he were not incarcerated presentence." Id. (internal quotation

14

marks omitted). Thus, it was concluded that "[t]he intention of [HRS §] 706-671 would be met if credit for time served [was] subtracted from the sum of the consecutive sentence[s]" as opposed to subtracting the credit from each consecutive sentence.[13] Id.

Tauiliili appealed the order of the trial court, arguing that it "incorrectly interpreted HRS § 706-671, by failing to credit his 853 days of presentence imprisonment" against each of his consecutive sentences. Id. at 196, 29 P.3d at 915. This court determined that "[t]he statutory language read in the context of the entire statute requires that presentence credit be applied to both the minimum and maximum imprisonment terms." Id. at 198, 29 P.3d at 917. It was concluded that, therefore, the trial court had properly "applied Tauiliili's presentence credit by deducting 853 days from both the minimum and maximum terms of his sentence." Id.

---

13     One of the trial court's conclusions stated:

For example, Defendant's MAXIMUM TERM should be calculated as:

| | | |
|---|---|---|
| Count I and II (concurrent) | = | 10 year maximum |
| Count III (consecutive) | + | 5 year maximum |
| SUM OF SENTENCE | = | 15 year maximum |
| Credit for time served | - | 853 days |
| **MAXIMUM TERM** | **=** | **12 Yrs 8 Mos** |

Defendant's MANDATORY MINIMUM TERM should be calculated as:

| | | |
|---|---|---|
| Count I | = | 5 year maximum |
| Count III (consecutive) | + | 3 year maximum |
| SUM OF SENTENCE | = | 8 year maximum |
| Credit for time served | - | 853 days |
| **MANDATORY MINIMUM TERM** | **=** | **5 Yrs 8 Mos** |

Tauiliili, 96 Hawaiʻi at 197, 29 P.3d at 916 (formatting altered).

Tauiliili's claim that the presentence credit should have been applied to each of his consecutive sentences, however, was rejected. This court stated that the commentary to HRS § 706-671 explains that the statute "'provides for some equalization . . . between those defendants who obtain pre-sentence release and those who do not.'" Id. at 199, 29 P.3d at 918 (ellipsis in original). Hence, it was decided that HRS § 706-671 "seeks to place an in-custody criminal defendant who cannot afford to post bail in the same position as his counterpart with bail money." Id. (citation omitted). According to the Tauiliili court, "[o]nce credit has been granted, no additional purpose is served by granting a second or 'double credit' against a later consecutive sentence." Id. (citation omitted). Tauiliili thus held that "when consecutive sentences are imposed, credit for presentence imprisonment is properly granted against only the aggregate of the consecutive sentence terms." Id.

V.

With respect to Petitioner's first question, article I, section 10 of the United States Constitution provides that '[n]o State shall . . . pass any . . . ex post facto Law[.]'" The Supreme Court has explained that the Clause is implicated by, inter alia, "[e]very law that aggravates a crime, or makes it greater than it was, when committed[.]" Miller v. Florida, 482 U.S. 423, 429 (1987) (internal quotation marks and citations

omitted). However, the Ex Post Facto Clause was "included in the Constitution to assure that federal and state legislatures were restrained from enacting arbitrary or vindictive legislation." Id. (citation omitted). The Supreme Court has explained, "As the text of the [Ex Post Facto] Clause makes clear, it 'is a limitation upon the powers of the Legislature, and does not of its own force apply to the Judicial Branch of government.'" Rogers v. Tennessee, 532 U.S. 451, 456 (2001) (quoting Marks v. United States, 430 U.S. 188, 191 (1977)).

Therefore, the ICA was correct in its conclusion that "'the constitutional prohibition against ex post facto measures applies only to legislative enactments.'" Garcia, 2010 WL 2513357, at *1 (quoting Jess, 117 Hawai'i at 407, 184 P.3d at 159). But, as recounted, Petitioner contends that the Policy is a "law" that implicates the Ex Post Facto Clause. Here, however, the Policy merely adopts and enforces the holding of Tauiliili which sets forth the proper interpretation of HRS § 706-671.

As pointed out by Petitioner, Respondent conceded that prior to Tauiliili, it was HPA's practice to give credits against multiple sentences. At the hearing on his Petition, Petitioner explained that, at the "pretrial conference, [] it seemed to be . . . the unanimous position of the parties that in fact that was the pre-Tauiliili policy, and that when Tauiliili was issued, a new policy came into effect where the credit was given just one time on the aggregate." Petitioner explained that, then, at a

17

subsequent hearing on other motions, "there seemed to be questions raised as to whether the policy of the parole board pre-Tauiliili . . . was in fact that people were given dual credit on consecutive terms" and whether "Tauiliili brought in a new policy or not[.]" Petitioner stated that for that reason, Petitioner "want[ed] to subpoena . . . the parole chairman at the time of Tauiliili or some other appropriate personnel to ask" him or her "what the policy was pre-Tauiliili and if in fact a new policy was instituted with Tauiliili."

Respondent conceded that "there was no factual dispute regarding the pre-Tauiliili practice of the HPA." According to Respondent, it had "never denied that . . . parolees were given multiple credits incorrectly prior to the issuance of the Tauiliili case." Respondent maintained that the issue was therefore not a factual one, but whether the practice of recalculating credits "constituted change in the . . . law that would implicate the ex post facto clause."

This court has not yet determined whether administrative rules, policies, or regulations are "laws" that implicate the Ex Post Facto Clause of the United States Constitution. However, in the instant case, it appears that the "law" pursuant to which Petitioner's minimum release dates were recalculated was not the Policy but, rather, HRS § 706-671 as interpreted by Tauiliili. HPA was bound to follow Tauiliili with or without the promulgation of the Policy. Here, HPA's change in

18

the application of presentence credits was a direct result of this court's decision in Tauiliili.  The Policy in fact reflects the foregoing.  To reiterate, the Policy states that "[p]ursuant to the Tauiliili case, any multiple sentences imposed at the same time will be computed with presentence credit applied only to the aggregate sentence, and not to each of the remaining sentences." Consequently, Petitioner's presentence credit was recalculated pursuant to HRS § 706-671, as implemented by the Policy.  Only the second time, Petitioner's sentence was calculated as it should have been under the statute.  Therefore, any change in DPS's or HPA's internal policies regarding the calculation of presentence credit is irrelevant for purposes of an ex post facto analysis.

## VI.

### A.

With respect to Petitioner's third question,[14] while the previous discussion makes apparent that the Ex Post Facto Clause does not apply to judicial decision-making, retroactive application of a judicial decision may implicate due process. Rogers, 532 U.S. at 456 (stating that limitations on the retroactive application of a judicial decision "are inherent in the notion of due process"); see also Jess, 117 Hawaiʻi at 407, 184 P.3d at 159 (stating that "[t]he Rogers Court . . . observed 'that limitations on ex post facto judicial decisionmaking are

---

[14]    Petitioner's second question is discussed in Part VII.

inherent in the notion of due process'" (quoting Rogers, 532 U.S. at 457)). The Supreme Court has stated that accordingly, "judicial reformation of the law 'violates the principle of fair warning, and hence must not be given retroactive effect,'" where such reformation is "'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue[.]'" Jess, 117 Hawaiʻi at 408, 184 P.3d at 160 (quoting Rogers, 532 U.S. at 462 (quoting Bouie v. City of Columbia, 378 U.S. 347, 354 (1964)) (emphasis added). As indicated previously, the ICA likewise observed that "'[a]n unforseeable [sic] interpretation of a statute that increases punishment, if applied retroactively, could violate due process.'" Garcia, 2010 WL 2513357, at *1 (quoting Campbell, 563 F. Supp. 2d at 26 (citing Bouie, 378 U.S. at 353-54)).

Prior to Jess, which the ICA relied upon in support of the proposition that judicial reformation of the law could violate principles of due process, a majority of this court had held that under the intrinsic/extrinsic distinction, facts which exposed a defendant to an extended prison term sentence were not required to be submitted to and decided by the jury. See, e.g., State v. Kaua, 102 Hawaiʻi 1, 72 P.3d 473 (2003) and State v. Rivera, 106 Hawaiʻi 146, 102 P.3d 1044 (2004). A majority of this court reaffirmed that proposisition in State v. Maugaotega, 107 Hawaiʻi 399, 114 P.3d 905 (2005) (Maugaotega I).

20

Then, "pursuant to the United States Supreme Court's mandate and judgment vacating" Maugaotega I, this court reconsidered Maugaotega's appeal in light of Cunningham v. California, 549 U.S. 270 (2007).  See Jess 117 Hawaiʻi at 394, 184 P.3d at 146 (citing State v. Maugaotega, 115 Hawaiʻi 432, 168 P.3d 562 (2007) (Maugaotega II)).  In Maugaotega II, this court "thus acknowledged that, in light of Cunningham, except for prior convictions, multiple convictions, and admissions, 'any fact, however labeled, that serves as a basis for an extended term sentence must be proved beyond a reasonable doubt to the trier of fact.'"  Id. (quoting Maugaotega II, 115 Hawaiʻi 447, 168 P.3d at 577).  The Jess majority determined that in light of Cunningham, the "intrinsic/extrinsic" distinction, which had been a part of Hawaiʻi case law for approximately thirty years as of the date of the Jess decision, was no longer viable in the context of charging procedure.  Id. at 400, 184 P.3d at 152.  Jess was a clear case of a "new rule" because it explicitly overruled prior precedent.

Here, unlike in Jess, Tauiliili did not "reform" the law in any way.  Tauiliili did not overrule any prior decision of this court with regard to the application of presentence credit to two or more consecutive sentences.  Tauiliili was the first occasion upon which this court had the opportunity to interpret HRS § 706-671 as to that issue.  Moreover, Tauiliili merely reiterated "what the statute meant before as well as after the

21

decision of the case giving rise to that construction." Rivers v. Roadway Exp., Inc., 511 U.S. 298, 312-13 (1994). Thus, Tauiliili did not reform this aspect of the "law" but, rather, confirmed it.

Additionally, Tauiliili did not increase the punishment for the crime for which Petitioner was convicted. Petitioner remains subject to the same punishment for the crimes to which he pled guilty as was imposed by the sentencing court at the time of his sentencing. In State v. Kamanaʻo, 118 Hawaiʻi 210, 188 P.3d 724 (2008), the defendant raised an argument similar to the one made by Petitioner in this case. There, the defendant argued that "the statute in effect at the time of the offenses allowed only concurrent maximum terms, and disallowed consecutive terms except [for] those committed while incarcerated [and that t]hus[,] the statutory construction that allowed consecutive sentencing increased the punishment retroactively." Id. at 231, 188 P.3d at 745 (brackets and ellipsis omitted) (emphases added). The defendant argued, inter alia, that such interpretation amounted to an ex post facto expansion of his punishment. Id. at 230-31, 188 P.3d at 745-46 (brackets, ellipsis, quotation marks, and citation omitted). This court rejected that argument, reasoning that the statute which applied to the defendant at the time of his sentences, allowed consecutive sentences to be imposed. Id. at 231, 188 P.3d at 745. Hence, it was explained that the court's interpretation of the statute was not an

"expansion" of the scope of the defendant's criminal liability, but a correct reading of the statute. Id.

Similarly, in Campbell, 563 F. Supp. 2d at 24, the petitioner had been sentenced to a prison term of five to fifteen years while on parole for an earlier offense. The petitioner's parole and "street-time" credit while on parole were revoked pursuant to Noble. Id. at 25 (citing Noble, 693 A.2d at 1084). In Noble, the Court of Appeals, District of Columbia, held that street-time credit could be revoked upon revocation of parole because although D.C. Code § 24-221.03 dictated that every person shall be given credit for time spent on parole, that section did not repeal D.C. Code § 24-406(a), which directed that "[t]he time a prisoner was on parole shall not be taken into account to diminish the time for which he was sentenced." Id. The petitioner challenged the forfeiture of his street-time pursuant to Noble, arguing that such forfeiture violated, inter alia, the Ex Post Facto and Due Process Clauses of the United States Constitution.

With respect to the petitioner's ex post facto challenge, the United States District Court, District of Columbia noted that McKee v. United States Parole Comm'n, 214 Fed. Appx. 1, 2 (D.C. Cir. 2006), held that "'Noble provided an authoritative statement of the meaning of D.C. Code § 24-406(a).'" See id. The district court concluded that accordingly, "petitioner's sentence was not increased, but

23

rather, the Commission rescinded credit towards completion of that sentence for time spent on parole, as required by D.C. law." Id.

As to the petitioner's due process argument, the district court acknowledged that "[a]n unforeseeable interpretation of a statute that increases punishment, if applied retroactively, could violate due process." Id. at 26 (citing Bouie, 378 U.S. at 353-54). However, the district court noted that in Davis, 772 A.2d at 217, the D.C. Court of Appeals held that although Noble "'contradicted expectations in the District [of Columbia] that were encouraged by authoritative pronouncements and that were reasonably held,' . . . [Noble] was not so unexpected or unforeseeable as to offend the Constitution[,]" inasmuch as "the Commission had an ongoing practice of withholding District of Columbia prisoner's street-time credit upon parole revocation[.]" Id. (citing Davis, 772 A.2d at 218-19 (internal citation omitted)).

In this case, as in Kamanaʻo and Noble, there was no ex post facto "expansion" of Petitioner's criminal liability. At the time Petitioner committed the offenses, HRS § 706-671 was, and remains, the law pursuant to which HPA must apply presentence credits. See Rivers, 511 U.S. at 312-13 (stating that "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction"). This court's

24

construction of HRS § 706-671 reflects the correct reading of the statute; not an expansion of it.

Assuming arguendo, Tauiliili did reform the law, it cannot be said to have been unexpected. As recounted, HAR § 17-1204-17(a) mandated that "[p]resentence credit accumulated by a sentenced felon offender shall be deducted from the offender's minimum sentence expiration date" set by the paroling authority. (Emphasis added.) HAR § 17-1204-17(b) stated that "[t]he expiration date shall be the earliest date when the sentenced felon offender can be released from a correctional facility prior to and upon further action by the paroling authority." (Emphasis added.) The earliest date that an offender could be released would be determined by aggregating the minimum terms of each consecutive term. Consequently, HAR § 17-1204-17 effectively required that a defendant's presentence credit be credited against the aggregate of minimum terms, not against the minimum term of each consecutive term. Hence, although Petitioner maintained that HPA had a practice of applying presentence credits to each consecutive term, HAR § 17-1204-17 would put Petitioner, or any prisoner, on notice that HPA was improperly applying presentence credits.

Moreover, as elucidated in Tauiliili, the commentary to HRS § 706-671 plainly stated that HRS § 706-671 was intended to "'provide[] for some equalization . . . between those defendants who obtain pre-sentence release and those who do not.'"

25

Tauiliili, 96 Hawaiʻi at 199, 29 P.3d 918.  As elucidated by Tauiliili, if presentence credit was applied to each consecutive sentence, "the more consecutive sentences a criminal defendant received, the more credit he would accrue for presentence imprisonment."  Id.  Because defendants who post bail and therefore, are not detained prior to sentencing, would not have any presentence credit, those defendants' minimum sentences would be longer than those defendants who were detained, if presentence credits were applied to each consecutive sentence.  In other words, such a construction of HRS § 706-671 "would actually penalize those who could afford to post bail" and would be contrary to the "equalization" noted in the commentary to HRS § 706-671.  Id.  Inasmuch as applying presentence credit to each consecutive sentence would place a defendant who had not obtained presentence release in a better position than a defendant who did obtain such release, the commentary to HRS § 706-671 indicated that presentence credits should be applied only once to the aggregate of all consecutive sentences, not against each consecutive sentence.

Since the commentary to HRS § 706-671 and HAR § 17-1204-17 suggested that presentence credit should be given only once to the aggregate of consecutive sentences as opposed to each consecutive sentence, Tauiliili cannot be said to have been unexpected for purposes of due process.  See Lockett v. Ohio, 438 U.S. 586, 597 (1978) (rejecting the defendant's "claim of

inadequate notice under the Due Process Clause of the Fourteenth Amendment," reasoning that because "the construction given the statute by the Ohio [Supreme C]ourt was consistent with both prior Ohio law and with the legislative history of the statute[,]" the construction could not be said to have been "so unexpected that it deprived [the defendant] of fair warning").

### B.

As indicated, in connection with his third question, Petitioner challenges the ICA's determination that Tauiliili was not unforeseeable because Tauiliili "was consistent with HPA's longstanding practice of only applying presentence credit once to a minimum sentence expiration date." Garcia, 2010 WL 2513357, at *2. It is noted that the record does indicate that Respondent did in fact concede to having a practice of applying presentence credits to each consecutive sentence. See supra. We note that in light of Respondent's concession, the ICA erred in determining that HPA had such a "longstanding practice" of applying presentence credit only once. However, even if HPA did have such a practice, it cannot be said that application of Tauiliili to Petitioner violated his due process rights. Due process does not protect Petitioner's asserted reliance on the HPA's improper calculation of his minimum release date, which thereby mistakenly shortened his imposed minimum and maximum sentences in contravention of HRS § 706-671. Such reliance is unfounded where both the commentary to HRS § 706-671 and HAR § 17-1204-17

27

demonstrated that the HPA was incorrectly applying presentence credits.

                              VII.

        Although not expressly argued, Petitioner seemingly suggests that he had a due process right in the implementation of the plea agreement terms.  But, as noted by Respondent on appeal to the ICA, the plea agreement specifically indicates that Petitioner's guilty plea was made "[i]n consideration of the substantial concessions of" (1) the reduction of a charge of Robbery in the First Degree to Robbery in the Second Degree under counts II, III, and IV; (2) Respondent's relinquishment of an allegation that Petitioner used a handgun under counts II, III, and IV; and (3) Petitioner being subject to continuing prosecution under counts II, III, and IV for Robbery in the First Degree should the first plea offer be rejected.  The only reference to presentence credit in the plea agreement states that Petitioner was "free to argue at sentencing for credit for time served dating from the date of initial arrest on October 22, 1995."  Thus, the plea agreement itself does not imply that Petitioner gave up any rights, based in part, on his understanding that presentence credit would be applied to each of his consecutive terms.

        When Petitioner was arrested for the offenses in this case in October 1995, Petitioner was on parole for a previous and unrelated conviction, the sentence for which was to expire in

                              28

2001.  As a result of violating parole, Petitioner had to serve the remaining six years of that term (unexpired term).  As noted, Petitioner had been sentenced to two ten year terms, the first of which was to run concurrently with Petitioner's unexpired term.  As recounted, Petitioner contends in his Application that the sentencing transcript indicates that he and the sentencing court intended to apply the prsentence credit to both of his consecutive terms.  The only language in the transcript to which he points in support of this argument is his statement, "So when I finish doing the unexpired prison term because these all these terms are going to be concurrent with my expired, that's six years off each term."  (Emphasis in original.)  He also points out that the sentencing court stated that his total sentence would be sixteen years.

However, the sentencing transcript reveals that the foregoing remarks were based on Petitioner's misconception that his unexpired term would run concurrently with both of his ten-year terms as opposed to only his first ten-year term.  The foregoing statement was made in the following context:

> [Court]:    This criminal number is supposed to run with any other sentence that you're currently serving.
> [Petitioner]:    Yes.  But not consecutively.
> [Court]:    No.  Just [c]ount 1 will be consecutive to the four [c]ounts 2 through 5.
> [Petitioner]:    Okay.  And my unexpired term will be concurrent with all five 10-year terms; correct?
> [Court]:    Yes.  And I think the effect is . . .
> [Petitioner]:    That those tens, even though they're running consecutive to each other.  And generally one would not start until the first one finished.  But as this plea agreement is worded, they both are going to be concurrent. So for the six years from 1995, which was my unexpired [] term, these terms are all going to run with that.

29

> So in 2001, when I finished [sic] [my unexpired term], there's only 4 and 4 left of [each] 10-year[] term, at which time they will revert consecutively to each other because there's no more unexpired prison term to run concurrently with.

(Emphasis added.)  Petitioner continued to argue, "So when I finish doing that unexpired [] term, because . . . all these terms are going to be concurrent with my unexpired, that's six years off this term."  The court then said, "Well, if you max out on everything -- I think in this case what you look at is 16 years[.]"  Petitioner stated, "The way I figured out, it came out to just about 14 years[.]"

At the hearing on his Petition in this case, the court asked Petitioner to identify language in the sentencing hearing that would indicate presentence credit would be applied to each of his consecutive terms.  Petitioner responded that he had stated that his entire sentence "came out to about 14 years" and the court responded that it was about "16 years."

But, at the Petition hearing, the court said that Petitioner had been arrested and placed into custody for the offenses in this case on October 22, 1995, and was sentenced on March 3, 1998.  Therefore, the presentence credit would have been "[a]bout two years and four months."[15]  The court explained that if Petitioner believed that credit would be applied twice, Petitioner would have calculated a total presentence credit of

---

[15]  As noted, at the time of sentencing, Petitioner had been incarcerated for 863 days which would amount to just under two years and four months.

30

four years and eight months.  Petitioner was asked to point to remarks from the sentencing hearing suggesting that he would receive a total of four years and eight months of presentence credit as opposed to two years and four months.  Petitioner then asserted that the record contained a reference to a five-year period stating, "I said 14, she said 16.  Right in the middle is 15."[16]  The court then asked, "Isn't it true that [in coming up with fourteen years,] what you [were] doing [was] . . . calculating it based on your prior conviction[,]" i.e. Petitioner's unexpired term.  Petitioner responded, "In part[,]" but maintained that it also included his calculation of presentence credit, which he believed would be applied to each consecutive ten-year term.

Although Petitioner contended at the Petition hearing, to the ICA, and now, to this court, that the fourteen-year and sixteen-year references support an intent to apply presentence credit to both of his consecutive terms, it is evident from the foregoing that the fourteen-year reference resulted from Petitioner's belief that he would be serving his unexpired term

---

[16]  If presentence credit were applied once, Petitioner's total sentence would be seventeen years and eight months.  If presentence credit were applied twice, Petitioner's total sentence would be about fifteen years and four months.  Notably, neither the court's sixteen-year reference nor Petitioner's fourteen-year reference reflect the application of presentence credit to both consecutive terms.  Apparently unable to find any specific language in the sentencing transcript suggesting that he or the court intended for his presentence credit to apply to each consecutive ten-year term, Petitioner attempts to use the average of the two periods stated to suggest that there was a fifteen-year reference.  Inasmuch as there was no mention of a credit of four years and five months, as discussed infra, those two statements had nothing to do with presentence credit.

from 1995 to 2001 for a total of six years and that both consecutive ten-year terms would run concurrently with his six year unexpired term. Therefore, he argued that after serving his six years on his unexpired term, four years would be left on each consecutive term which would then run consecutively for a total sentence of fourteen years (six years on the unexpired and two consecutive four-year terms).

It is unclear how the court arrived at sixteen years. Respondent urges that it is likely that the mistaken sixteen-year remark resulted from Petitioner's reference to "'six years' [from] his then-unexpired prison term and adding it to the second of his 'ten-year term' for a total of sixteen years." This is supported by the fact that the court's statement responded to Petitioner's argument that both of his consecutive ten-year terms were to run concurrently with his unexpired term; not any argument relating to presentence credit. The sentencing court in fact stated that it had not "done the math."

It may be further observed that in response to Petitioner's argument regarding his unexpired term, the sentencing court specifically warned, "And let me tell you –- I can't tell you what the Paroling Authority will do because I don't know if they'll make you serve the full time or if they'll parole you or anything else." Petitioner then stated that although he was willing to serve the sentence imposed by the HPA, he "just wanted to have [his] sentence imposed in accordance with

the plea agreement and related statutes."  The following exchange then took place.

> [Court]:   What I'm telling you right now is if you--if you don't see it that way, you have a couple of choices. One of those choices is to forget the plea agreement, withdraw your plea, go to trial on all the original charges.
> [Petitioner]:   That would never come into my mind. What I would just like is, you know, have these obligations under the plea agreement.  That's the issue.
> [Court]:   Okay.  And if there's a dispute about that, you need to know that the State is looking for 20 years.  But from what you've told me, you're looking for 14.
> [Petitioner]:   No.  But the thing is why did the State bind themselves [sic] and the [c]ourt bind themselves [sic] to this agreement as specifically written?
> [Court]:   I'm saying I'm looking at the whole agreement.  I'm not looking at -- picking one sentence out.
> [Petitioner]:   Okay.  Well, I'm looking at the whole agreement myself.  And my interpretation, I believe, is correct and is backed [b]y related statutes.  So if I don't see it any other way I'll have to -- because I will not withdraw my plea ever -- I would have to appeal. . . .

(Emphases added.)  As indicated, the entire colloquy involved a disagreement regarding how Petitioner's current sentence would run with his unexpired term.  Petitioner agreed with the court's interpretation in declining to withdraw his plea notwithstanding any alleged discrepancy.  The foregoing also confirms that the court did not make any promises regarding the use of presentence credits, and Petitioner was specifically warned that the sentencing court could not make any representations regarding his release date or whether he would be eligible for parole.  In view of the foregoing, Petitioner's argument that recalculation of his sentence violated his due process rights must be rejected.[17]

---

[17]   Because this court has adopted a similar due process analysis with respect to the retroactive application of judicial decisions, see Jess, 117 Hawaiʻi at 407-08, 184 P.3d at 159-60, Petitioner's due process claim fails under both the United States and Hawaiʻi Constitutions.

VIII.

As recounted, separate and apart from Petitioner's questions regarding the Ex Post Facto and Due Process Clauses of the United States Constitution, Petitioner's second question involves whether Tauiliili should have been applied retroactively to Petitioner, or whether it should have applied prospectively only.

A.

This court has stated that "judicial decisions are assumed to apply retroactively[.]"  Ikezawa, 75 Haw. at 220, 857 P.2d at 597.  However, retroactive application "is not automatic[,]" id. at 220, 857 P.2d at 598, and where "a judicial decision announces a 'new rule,'" "this court may, in its discretion, determine that the interests of fairness preclude retroactive application of the new rule[,]"  State v. Ketchum, 97 Hawaiʻi 107, 123 n.26, 34 P.3d 1006, 1022 n.26 (2001) (quoting State v. Peralto, 95 Hawaiʻi 1, 6, 18 P.3d 203, 208 (2001)); see State v. Garcia, 96 Hawaiʻi 200, 211, 29 P.3d 919, 930 (2001) ("When questions of state law are at issue, state courts generally have the authority to determine the retroactivity of their own decisions.") (Internal quotation marks and citations omitted.)  In other words, retroactivity is assumed unless a "new rule" is announced.  See Jess, 117 Hawaiʻi at 400, 184 P.3d at 152 ("The question of prospective application arises when this court announces a new rule.")  (Citation omitted.).  Thus, the

threshold question is whether this court's decision in <u>Tauiliili</u> announced a "new rule." As this court has recognized, "[i]t is only when the law changes in some respect that an assertion of nonretroactivity may be entertained, the paradigm case arising when a court expressly overrules a precedent upon which the contest would otherwise be decided differently and by which the parties may previously have regulated their conduct." <u>Id.</u> at 400, 184 P.3d at 152 (quoting <u>James B. Beam Distilling Co. v. Georgia</u>, 501 U.S. 529, 534 (1991)).

As discussed previously, in <u>Jess</u>, the majority ruled that <u>Jess</u> announced a new rule because, under previous precedent, "the intrinsic/extrinsic distinction . . . did not require, and indeed counseled against, the inclusion of extrinsic facts in the charging instrument" and, therefore, <u>Jess</u> "represent[ed] the first instance in which [a majority of this court] questioned the ongoing viability of the intrinsic/extrinsic distinction in the context of charging procedure." <u>Id.</u> at 400-01, 184 P.3d at 152-53. As stated, the rule in <u>Jess</u> was new because it marked a departure from this court's prior precedent. By contrast, in <u>Ketchum</u>, this court held that the rule for which the petitioner sought nonretroactivity was not new, inasmuch as it "merely clarified [an] existing proposition." <u>Ketchum</u>, 97 Hawaiʻi at 123 n.26, 34 P.3d at 1022 n.26. "As such, there [wa]s no 'new [] rule' to which to give retroactive application in the first instance." <u>Id.</u>

Applying the foregoing, <u>Tauiliili</u> did not "overrule[] a precedent upon which the contest would otherwise be decided differently[.]"  <u>Jess</u>, 117 Hawaiʻi at 400, 184 P.3d at 152. Unlike <u>Jess</u>, <u>Tauiliili</u> was not a departure from precedent but, rather, confirmed the law as it existed prior to that decision. <u>See</u> <u>Rivers</u>, 511 U.S. at 312-13 ("A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction.").  Accordingly, the proposition in <u>Tauiliili</u> applies retroactively.

B.

Assuming <u>arguendo</u>, <u>Tauiliili</u> did announce a "new rule," insofar as it was inconsistent with HPA's practice of applying presentence credits to each consecutive sentence, <u>Ikezawa</u> does not require prospective application only, as Petitioner urges. In <u>Ikezawa</u>, on March 23, 1990, the defendant had been arrested and charged with third degree assault.  75 Haw. at 213, 857 P.2d at 595.  This charge was subsequently dismissed without prejudice.  <u>Id.</u>  Over a year later, the defendant was charged with second degree assault.  <u>Id.</u>  The defendant filed a motion to dismiss the charge pursuant to Hawaiʻi Rules of Penal Procedure Rule (HRPP) 48(b)(1),[18] which was denied.  The defendant was

---

[18]    HRPP Rule 48(b)(1) in effect at the time provided:

Except in the case of traffic offenses, the court shall, on motion of defendant, dismiss the charge, with or without prejudice in its discretion, if the trial is not commenced within 6 months from:

(continued...)

convicted of the lesser included offense of third degree assault. Id.

On appeal, the defendant argued that the circuit court had improperly denied his motion to dismiss the charge because "the six-month period within which trial must commence under HRPP [Rule] 48(b)(1) had lapsed." Id. The defendant contended that pursuant to State v. Holt, 67 Haw. 246, 684 P.2d 971 (1984), and State v. Stone, 65 Haw. 308, 651 P.2d 485 (1982), "where the original charge differs from the subsequent charge, the time period between the dismissal of the original charge and the filing of the new charge must be included in the six-month calculation." Ikezawa, 75 Haw. at 213, 857 P.2d at 595 (emphasis added).

The defendant argued that State v. Balauro, 73 Haw. 70, 828 P.2d 267 (1992), which was decided after the defendant had been convicted but prior to his appeal, should not apply to him. 75 Haw. at 213, 857 P.2d at 595. In Balauro, this court held that under a correct reading of HRPP 48(b)(1), the six-month period is tolled when the later charge is the same as, or is required to be joined with, the original charge. Id. In other words, under Balauro, the six-month period would have been tolled

_____

18(...continued)
            (1) the date of arrest or of filing of the charge,
            whichever is sooner, on any offense based on the same
            conduct or arising from the same criminal episode for
            which the arrest or charge was made[.]

Ikezawa, 75 Haw. at 211 n.1, 857 P.2d at 594 n.1 (formatting altered).

because the second charge, assault in the second degree, was required to be joined with the original charge of assault in the third degree. The defendant maintained that applying <u>Balauro</u> to him would violate his due process rights because he had relied on <u>Stone</u>, and if he had known that <u>Balauro</u> would control, he could have filed his motion at a later time, when a HRPP Rule 48(b)(1) dismissal would have been required. <u>Id.</u> at 213-14, 857 P.2d at 595.

Ikezawa observed that in <u>State v. Santiago</u>, 53 Haw. 254, 268, 492 P.2d 657, 665 (1971), this court noted the "curious lacework" of the Supreme Court regarding retroactivity and recognized that:

> In making those determinations, the United States Supreme [Court] . . . has given consideration to three factors: (a) the purpose to be served by the newly announced rule, (b) the extent of reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.

75 Haw. at 220, 857 P.2d at 598 (brackets omitted). The <u>Ikezawa</u> court added that in another case, <u>Russell v. Blackwell</u>, 53 Haw. 274, 277, 492 P.2d 953, 956 (1972), this court stated that "'[f]actors to be considered include: Prior history of the rule in question, its purpose and effect, and whether retroactive operation will further or retard its operation; interests in the administration of justice and the integrity of the judicial process.'" 75 Haw. at 220, 857 P.2d at 598. According to <u>Ikezawa</u>, "implicit in the factors described in <u>Santiago</u> and <u>Russell</u> is the concept of fairness." <u>Id.</u>; <u>see also</u> <u>Garcia</u>, 96

38

Hawaiʻi at 211, 29 P.3d at 930 (stating that the <u>Ikezawa</u> placed emphasis on "'the concept of fairness'" in retroactively applying judicial decisions). <u>Ikezawa</u> thus stated that "where substantial prejudice results from the retrospective application of new legal principles to a given set of facts, the inequity may be avoided by giving the guiding principles prospective application only." <u>Ikezawa</u>, 75 Haw. at 220-21, 857 P.2d at 598.

Applying the three factors from <u>Santiago</u>, this court determined that with regard to the first factor, "[t]he purpose of HRPP Rule 48 is to insure a defendant's right to a speedy trial by requiring that the trial start within six months of the charge or arrest." <u>Id.</u> at 222, 857 P.2d at 598. The <u>Ikezawa</u> court concluded that the purpose of <u>Balauro</u> was to set forth the correct interpretation of HRPP Rule 48. <u>Id.</u> at 222, 857 P.2d at 598-99 ("A retroactive application of <u>Balauro</u> furthers the purpose of the HRPP [Rule] 48(c) . . . by correctly interpreting the rule and tolling the six-month limitation where the reprosecution occurs after the dismissal of an earlier charge.").

As to the second factor, the <u>Ikezawa</u> court noted that the defendant had relied on this court's decision in <u>Stone</u> and moreover, that his "reliance was substantial." <u>Id.</u> at 222, 857 P.2d at 599. <u>Ikezawa</u> reasoned that "had [the defendant] known that the <u>Balauro</u> rule would be applied, he could have filed a successful HRPP 48 motion at a later time." <u>Id.</u>

Finally, with respect to the administration of justice, this court determined that, "given the timing of [the defendant's] motion, Stone required a dismissal of the charge while the retroactive application of Balauro preclude[d] dismissal." Id. It was noted that the defendant "could have received a dismissal under the Balauro rule if he had delayed the filing of his motion." Id. Ikezawa determined that "[r]etroactive application of Balauro would, therefore, produce a substantially inequitable result." Id. Ikezawa recognized that on the other hand, "applying Balauro prospectively would not place a heavy burden on the judicial system[.]" Id. This court ultimately determined that Balauro should not have been applied retroactively to the defendant inasmuch as "the inequity and prejudice of retroactively applying Balauro . . . outweigh[ed] the fact that Balauro properly interpreted the language of HRPP [Rule] 48(c)(6)." Id.

In the instant case, with respect to the first Santiago factor, the purpose of Tauiliili was to set forth the correct interpretation of HRS § 706-671. Thus, Tauiliili furthers the purpose of HRS § 706-671 of providing "equalization . . . between those defendants who obtain pre-sentence release and those who do not" by ensuring that all defendants similarly situated are treated equally as to the length of their sentences for the same offenses. Tauiliili, 96 Hawaiʻi at 199, 29 P.3d 918 (internal quotation marks omitted).

With respect to the second factor, this court has noted that Ikezawa specifically "considered substantial prejudice in the context of a defendant's reliance on overruled precedent." Garcia, 96 Hawaiʻi at 212, 29 P.3d at 931. Here, there was no prior decision which interpreted HRS § 706-671 as to the application of presentence credit to consecutive sentences. Any reliance on Petitioner's behalf was on HPA's prior practice of applying presentence credits to each consecutive sentence, which resulted from HPA's own misapplication of HRS § 706-671. Furthermore, although ultimately, Petitioner's minimum release date was set at a later date than originally set, application of Tauiliili to Petitioner avoids any unfairness that may result as between defendants convicted for the same offenses. See Tauiliili, 96 Hawaiʻi at 199, 29 P.3d at 918 (stating that presentence credit is intended to ensure "equal treatment of all defendants whether or not they are incarcerated prior to conviction"). For example, in the instant case, Petitioner was essentially sentenced to two consecutive ten years terms. See supra. By HPA's original calculation, Petitioner's presentence credit of 863 days was applied to both his first term and second term. Under that interpretation, a defendant who had been convicted of the same offenses as Petitioner, but who did not serve any presentence time, would serve a longer sentence than Petitioner's sentence by a total of 863 days. Thus, the application of Tauiliili to Petitioner would not result in

injustice inasmuch as Petitioner would serve the same sentence that a defendant who had not been detained prior to sentencing would serve.

It may be further observed that HRS § 706-600 (1993) "expressly precludes the imposition of any sentence not authorized by chapter 706." State v. March, 94 Hawaiʻi 250, 254, 11 P.3d 1094, 1098 (2000). Because Tauiliili set forth the correct interpretation of HRS § 706-671, to rule that Tauiliili should not be retroactively applied would be to sanction a sentence not authorized under chapter 706.

Finally, as to the third factor, the interests in the administration of justice and the integrity of the judicial process are best served by consistent application of sentences for all defendants convicted for the same offense and by having the sentences of all inmates properly calculated. Also, HPA has seemingly undertaken the task of recalculating the sentences of inmates, as evident from the Policy. Therefore, retroactive application of Tauiliili would not place a heavy burden on the courts or on the administration of justice. In sum, any alleged inequity resulting from the recalculation of Petitioner's sentence does not outweigh the other Santiago factors.

IX.

The ICA did not gravely err in affirming the court's Order Denying Petitioner's January 10, 2008 Nonconforming

42

Petition for Post-Conviction Relief, and its July 16, 2010

judgment is affirmed on the grounds set forth herein.

| | |
|---|---|
| Glenn D. Choy for petitioner/petitioner-appellant. | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Diane K. Taira and Darcy H. Kishida, Deputy Attorney Generals, for respondent/respondent-appellee. | /s/ Simeon R. Acoba, Jr. |
| | /s/ James E. Duffy, Jr. |
| | /s/ Edwin C. Nacino |

