Concurring Opinion by
NAKAYAMA, J.,
in which RECKTENWALD, C.J., joins
I. INTRODUCTION
I concur with the Majority’s determination that charging defects are not jurisdictional in nature and that the District Court of the Second Circuit (district court) properly denied Petitioner/Petitioner-Appellant Sandra Kay Schwartz’s (Schwartz) Hawañ Rules of Penal Procedure (HRPP) Rule 40 petition. I write separately because I believe that State v. Wheeler established a new rule that should not apply to convictions that were final when Wheeler was decided. Indeed, this court has already determined that Wheeler worked a fundamental change in Hawaii’s OVUII charging requirements.
However, in light of the Majority’s con-trai’y conclusion, I would affirm Schwartz’s conviction pursuant to HRPP Rule 40(a)(3). Specifically, I would hold that Schwartz failed to demonstrate extraordinary circumstances that would justify her failure to ehal- *283 lenge the sufficiency of her indictment before her conviction became final. In addition, she failed to rebut the presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure. I would not resolve this case pursuant to State v. Morin, as the Majority has, because Morin is limited to convictions that resulted from guilty or nolo contendere pleas, and thus, artificially narrows the Majority opinion.
II. DISCUSSION
A. Retroactivity
This court has been asked to decide whether State v. Wheeler, 121 Hawai'i 383, 219 P.3d 1170 (2009), should apply retroactively to cases on collateral review. “Although judicial decisions are assumed to apply retroactively,” State v. Ikezawa, 75 Haw. 210, 220, 857 P.2d 593, 597 (1993), “ ‘the Constitution neither prohibits nor requires retrospective effect.’ ” State v. Santiago, 53 Haw. 254, 268, 492 P.2d 657, 665 (1971) (quoting Linkletter v. Walker, 381 U.S. 618, 629, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965)). As a result, when this court announces a new rule, it may give that rule
(1) purely prospective effect, which means that the rule is applied neither to the parties in the law-making decision nor to those others against or by whom it might be applied to conduct or events occurring before that decision;
(2) limited or “pipeline” retroactive effect, under which the rule applies to the parties in the decision and all cases that are on direct review or not yet final as of the date of the decision; or
(3) full retroactive effect, under which the rule applies both to the parties before the court and to all others by and against whom claims may be pressed.
State v. Jess, 117 Hawai'i 381, 401, 184 P.3d 133, 153 (2008) (internal quotations marks and citations omitted, formatting altered). However, judicial decisions that do not develop a new rule merely clarify the law already in existence, and thus, are not eligible for prospective or limited retroactive effect. See James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 534, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) (“It is only when the law changes in some respect that an assertion of nonretroactivity may be entertained.”). Therefore, as a threshold matter, we must address whether Wheeler established a new rule.
1. New Rule Determinations
There are four categories of cases that provide guidance for determining whether a new rule has been created. First, the “paradigm” case that creates a new rule is when a court “expressly overrules a precedent upon which the contest would otherwise be decided differently and by which the parties may previously have regulated their conduct.” Id.; see, e.g., Lawrence v. Texas, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003) (overruling Bowers v. Hardwick, and holding that a Texas statute making it a crime for two persons of the same sex to engage in certain intimate sexual conduct was unconstitutional). Another paradigm example of a new rule is when a court imposes a new procedural obligation on the State for the first time. See, e.g., Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (imposing the requirement of Miranda warnings as a prerequisite to the admission of statements obtained during custodial interrogation); Tachibana v. State, 79 Hawai'i 226, 236, 900 P.2d 1293, 1303 (1995) (requiring trial courts to “advise criminal defendants of their right to testify” and to “obtain an on-the-record waiver of that right in every case in which the defendant does not testify”). Such decisions trigger the court’s duty to conduct a retroactivity analysis because they present “a clear break with the past.” Desist v. United States, 394 U.S. 244, 248, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969).
Second, “a case announces a new rule if the result was not dictated by precedent existing at the time the defendant’s conviction became final.” Teague v. Lane, 489 U.S. 288, 301, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (emphasis in original). Put differently, a new rule is created when a judicial decision “breaks new ground” by stating a legal principle for the first time. Id. In subsequent cases, the Court suggested that what was “dictated” should not be read too *284 narrowly. In Butler v. McKellar, 494 U.S. 407, 417-18, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990), for example, the Court clarified that a rule is new “as long as the correctness of the rule, based on precedent ... is ‘susceptible to debate among reasonable minds.’ ” And in Lambrix v. Singletary, 520 U.S. 518, 527-28, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997), the Court said, “the Teague inquhy • •. asks whether [the case] was dictated by precedent—i.e., whether no other interpretation was reasonable.” If not, it is a new rule. In such cases, the newly announced principle will invariably be consistent with preexisting case law, because “when ‘new law must be made, it is often in fact a matter of the court articulating particular clear implications of values so generally shared in the society that the process might well be characterized as declaring a preexisting law.” Roger J. Tray-nor, Quo Vadis, Prospective Overuling: A Question of Judicial Responsibility, 50 Hastings L.J. 771, 774 (1999).
For example, in Payton v. New York, 445 U.S. 573, 576, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the Supreme Court held that the Fourth Amendment “prohibits the police from making a warrantless and nonconsensual entry into a suspect’s home in order to make a routine felony arrest.” This conclusion flowed inexorably from the Supreme Court’s well-settled Fourth Amendment principles, and, in fact, had been stated in dictum in Coolidge v. New Hampshire, 403 U.S. 443, 480, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Nonetheless, in United States v. Johnson, 457 U.S. 537, 551, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), the Supreme Court acknowledged that Payton had announced a new rule because it “did not simply apply settled precedent to a new set of facts.” Payton, therefore, did not present a situation where retroactivity could be presumed. This was so despite the fact that Payton had “not announced] an entirely new and unanticipated principle of law.”[1] Id. at 552, 102 S.Ct. 2579. Accordingly, the Supreme Comí; proceeded to weigh the merits and demerits of retroactivity,[2]
The third category of cases are those that merely apply settled precedent to new and different factual situations. In such cases, “no real question has arisen as to whether the later decision should apply retrospectively.” Johnson, 457 U.S. at 549, 102 S.Ct. 2579. For example, in State v. Loo, 94 Hawai'i 207, 210, 10 P.3d 728, 731 (2000), this *285 court applied the well-settled rule that “ ‘persons temporarily detained for brief questioning by police officers ... need not be warned about incrimination and their right to counsel, until such time as the point of arrest or accusation has been reached,’ ” and held that a particular defendant’s Miranda rights had not been violated because the point of arrest or accusation had not been reached. We later held that “Loo did not announce a ‘new’ rule.” State v. Ketchum, 97 Hawai'i 107, 123 n. 26, 34 P.3d 1006, 1022 n. 26 (2001).[3]
Fourth, judicial decisions that merely engage in statutory interpretation do not typically create new rules. See, e.g., Rivers v. Roadway Express, Inc., 611 U.S. 298, 312-13, 114 S.Ct. 1610, 128 L.Ed.2d 274 (1994) (“A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction.”); Garcia v. State, 125 Hawai'i 429, 263 P.3d 709 (2010) (holding that insofar as State v. Taui-liili merely interpreted a statute, it “was not a departure from precedent but, rather, confirmed the law as it existed prior to that decision”).
In sum, there are four categories of cases that delineate when a new rule is established. First, those cases that overrule precedent or impose new obligations on the State dearly establish new rules insofar as they present a clear break from the past. See, e.g., Lawrence, 539 U.S. 558, 123 S.Ct. 2472; Miranda, 384 U.S. 436, 86 S.Ct. 1602. Second, those cases that take a meaningful step forward in the development of legal doctrine by extending consistent precedent have been understood to establish new rules because their results were not “dictated” by precedent. See, e.g., Payton, 445 U.S. 573, 100 S.Ct. 1371. Third, those cases that merely apply settled precedent to the facts at bar do not create new rules. See, e.g., Loo, 94 Hawai'i 207, 10 P.3d 728. Fourth, cases that merely engage in statutory interpretation explain what the law has always meant, and thus, do not usually create new rules. See, e.g., State v. Tauiliili 96 Hawai'i 195, 29 P.3d 914 (2001).
2. State v. Wheeler
The determination of whether Wheeler established a new rule requires analyzing the law in existence prior to Wheeler, the holding of Wheeler itself, and this court’s subsequent statements, in light of the preceding legal framework.
a. Pre-Wheeler Caselaw
Four aspects of the law in existence prior to Wheeler form the relevant background of that opinion; (i) charging requirements under Hawaii law, (ii) the post-conviction liberal construction standard, (iii) this court’s opinions in State v. Ruggiero, 114 Hawai'i 227, 160 P.3d 703 (2007) and State v. Kekuewa, 114 Hawai'i 411, 163 P.3d 1148 (2007), and (iv) the State’s routine practice of charging OVUII in the language of the statute.
i. Charging Requirements Under Hawaii Law
Prior to Wheeler, this court had established the overarching rule that an “accusation must sufficiently allege all of the essential elements of the offense charged,” a requirement that “obtains whether an accusation is in the nature of an oral charge, information, indictment, or complaint[.]” State v. Jendrusch, 58 Haw. 279, 281, 567 P.2d 1242, 1244 (1977); see also State v. Wells, 78 Hawai'i 373, 379-80, 894 P.2d 70, 76-77 (1995) (stating that the sufficiency of the charging instrument is measured by “whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he [or she] must be prepared to meet” (citations and internal quotation marks omitted) (brackets in original)). A defective charge “constitute^] a denial of due process,” Jendrusch, 58 Haw. at 281, 567 P.2d at 1244, but does not affect the court’s jurisdiction over the case.
This court has also established certain guidelines to determine whether charges framed in the language of a statute are sufficient: “Where the statute sets forth with *286 reasonable claiity all essential elements of the crime intended to be punished, and fully defines the offense in unmistakable terms readily comprehensible to persons of common understanding, a charge drawn in the language of the statute is sufficient.” Id. at 282, 567 P.2d at 1245. On the other hand, “ ‘where the definition of an offense ... includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition; but it must state the species ... [and] descend to particulars.’ ” State v. Israel, 78 Hawai'i 66, 73, 890 P.2d 303, 310 (quoting Russell v. United States, 369 U.S. 749, 765, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962)). At all times, the question of whether a charge is sufficient is a matter of constitutional law, and our review of such matters is de novo. See Wheeler, 121 Hawai'i at 390, 219 P.3d at 1177.
ii. Liberal Construction
Another well-established aspect of this court’s charging defect doctrine is the “presumption of validity” that attaches to charges that are challenged for the first time on appeal. State v. Sprattling, 99 Hawai'i 312, 318, 55 P.3d 276, 282 (2002). In such circumstances, this court will “not reverse a conviction based upon a defective indictment [or complaint] unless the defendant can show prejudice or that the indictment [or complaint] cannot within reason be construed to charge a crime.” State v. Merino, 81 Hawai'i 198, 212, 915 P.2d 672, 686 (1996) (citation and quotation marks omitted).
With respect to whether an indictment can within reason be construed to charge a crime, we “interpret a charge as a whole, employing practical considerations and common sense.” Sprattling, 99 Hawai'i at 319, 55 P.3d at 283. In making this determination, courts can consider information in addition to the charge that was provided to the defendant prior to his or her objection to the charge. See id. Thus, we have held that “[u]nder the liberal construction standard, two counts can be read together[,]” for example State v. Tominiko, 126 Hawai'i 68, 76, 266 P.3d 1122, 1130 (2011). In the case of a Wheeler defect, we have held that an OVUII indictment can be liberally construed to charge a crime if the indictment contains another charge that provides fair notice of the public roads element. See id.
iii. Ruggiero and Kekuewa
In Ruggiero, this court held that a trial court had plainly erred when it convicted a defendant as a habitual OVUII offender in violation of Hawaii Revised Statutes (HRS) § 291E-61(a) and (b)(2) because the complaint failed to allege the essential element that the defendant had been convicted of a prior OVUII offense within the previous five years. 114 Hawai'i at 239, 160 P.3d at 715. However, this court further held that “the complaint [could] reasonably be construed to charge the crime of DUI as a first offense,” and “remand[ed] the case to the district court for the entry of judgment of conviction of that offense.” Id. at 240-41, 160 P.3d at 716-17. Notably, the charge did not allege the public roads element of OVUII, and this court did not resort to liberal construction to supply that element.
Similarly, in Kekuewa, this court held that an oral charge of OVUII as a second offense was fatally defective because it' failed to allege the prior conviction element. 114 Hawai'i at 425-26, 163 P.3d at 1162-63. However, we further concluded that
the prosecution’s oral charge set forth the essential elements of the included offense described by HRS §§ 291E-61(a) and (b)(1) (Supp.2004). See State v. Ruggiero, 114 Hawai'i 227, 240, 160 P.3d 703, 716 (2007) (stating that a complaint mirroring only the provisions set forth in HRS § 291E-61(a)(l), and making no mention of the accused’s status as either a first-time or multiple offender, sufficiently described the first-level OVUII offense under HRS §§ 291E-61(a) and (b)(l))[.]
Id. at 426, 163 P.3d at 1163. Accordingly, this court remanded to the trial court for entry of judgment of conviction of OVUII as a first offense. Id. As was the case in Rug-giero, the charge did not allege the public roads element of OVUII, and this court did not resort to liberal construction to supply that element.
*287 iv. Routine Practice
Ruggiero and Kelcuewa are emblematic of a trend. Prior to this courts decision in Wheeler, “the State routinely charged OVUII by tracking the offense language without alleging the public-road element.” Christian v. State, 131 Hawai'i 153, 160, 315 P.3d 779, 786 (App.2013). However, “there is no indication that the State, the trial court, or the defendants were generally unaware of the State’s obligation to prove the public-road element, or that defendants driving on nonpublic roads were being convicted of OVUII.” Id.
b. State v. Wheeler
In Wheeler, this court held that the State was required to allege that the defendant operated a vehicle on a public way, street, road or highway, and that the State’s routine practice of charging OVUII in the language of the statute was constitutionally insufficient as a matter of due process. 121 Hawai'i at 396, 219 P.3d at 1183. The ease turned on whether use of the word “operate” in an oral charge gave sufficient notice to the defendant that the State was required to prove that he had operated a vehicle on a public way, street, road, or highway. We reasoned:
While the Supreme Court in Hamling did not require that the component elements of the “constitutional definition” of obscenity be pleaded in an indictment, it is significant that the term “obscenity” itself provided a person of common understanding with some notice of the nature of the prohibited conduct. In contrast, “operate” has been statutorily defined in HRS § 291E-1 in a manner that does not comport with its commonly understood definition. The word “operate” has been defined as “to perform a function, or operation, or produce an effect,” Black’s Law Dictionary 1091 (6th ed. 1990), or “to perform a funetion[,] exert power or influence [or] to produce an appropriate effect[,]” Merriamr-Wébster’s Collegiate Dictionary 814 (10th ed. 1993), and does not geographically limit where the conduct must take place. The statutory definition of “operate,” however, requires that the conduct take place “upon a public way, street, road, or highway.” HRS § 291E-1. Therefore, the term “operate” as used within HRS § 291E-61 is neither “unmistakable” nor “readily comprehensible to persons of common understanding.” Merino, 81 Hawai'i at 214, 915 P.2d at 688[.]
This court’s analysis of charges under the Hawaii constitution has focused on whether the language actually used in the charge provides fair notice to the defendant.... The use of the phrase “operate” did not provide adequate notice to Wheeler that the State was required to prove that his operation of the vehicle occurred on a public way, street, road, or highway.
Id. at 394-95, 219 P.3d at 1181-82 (footnote omitted). Thus, the holding in Wheeler depended on our constitutional determination that the statutory definition of the word “operate” would not be readily comprehensible to a person of common understanding because it differed from the colloquial definition of “operate.”
Although this conclusion flowed naturally from precedent, the result was not “dictated” by that precedent insofar as no other case had held that an oral charge was constitutionally insufficient due to the failure to allege the public roads element. Nonetheless, our reliance on precedent was fundamental, as it always is when arriving at a judicial decision:
a judge invariably takes precedent as his starting point; he is constrained to arrive at a decision in the context of ancestral judicial experience: the given decisions or, lacking these, the given clues. Even if his search of the past yields nothing, so that he confronts a truly unprecedented case, he still arrives at a decision in the context of judicial reasoning with recognizable ties to the past; by its kinship thereto it not only establishes the unprecedented case as a precedent for the future, but integrates it into the often rewoven but always unbroken line with the past.
Traynor, supra, at 774-75.
Another important aspect of Wheeler was this court’s treatment of Ruggiero and Ke-kuewa. The State argued that those cases had established precedent that charging *288 OVUII in the language of the statute was constitutionally sufficient despite the failure to allege the public roads element. This court rejected that argument on two grounds. First, we stated: “Contrary to the argument of the State, for purposes of stare decisis, the holdings of those cases are limited to the issues that were actually decided by the court, and are not dispositive of the distinct issue presented here.” Wheeler, 121 Hawai'i at 399, 219 P.3d at 1186 (emphasis added). Second, we stated that Ruggiero and Kekuewa were factually distinguishable because “neither of those defendants made a timely objection to the sufficiency of the OVUII charge in the trial court.” Id. We explained that this was significant because the post-conviction liberal construction rule requires that we liberally construe charges challenged for the first time on appeal and apply a “presumption of validity.” IcL Because Wheeler timely objected to the oral charge, the liberal construction standard was not applicable. Id. at 400, 219 P.3d at 1187.[4]
c. State v. Walker
After Wheeler was decided, this court accepted certiorari in State v. Walker, “for the limited purpose of clarifying and reconciling this court’s opinions in State v. Ruggiero, and State v. Kekuewa, in light of State v. Wheeler.” 126 Hawai'i 476, 478, 273 P.3d 1161, 1164 (2012) (citations omitted). Walker was convicted of habitual OVUII (HOVUII) based on a charge that was defective in that it failed to allege the prior conviction element of HOVUII. Id. at 484, 273 P.3d at 1170. Accordingly, the ICA vacated Walker’s conviction and remanded to the district court for dismissal of the HOVUII count without prejudice. Id. Walker filed an application for writ of certiorari in this court wherein he argued that the ICA gravely erred by failing to reverse his HOVUII conviction, or, in the alternative, by failing to remand the ease for entry of judgment and conviction for OVUII as a first offense. Id. at 477-78, 273 P.3d at 1163-64.
In support of the latter argument, “Walker assert[ed] that his case [was] ‘on all fours’ with State v. Ruggiero, and State v. Kekuewa.” Id. at 486, 273 P.3d at 1172 (citations omitted). This court agreed in part, but rejected Walker’s argument in recognition of the fact that Wheeler changed the charging requirements for OVUII offenses:
While Walker correctly characterizes Rug-giero and Kekuewa in his Application, his argument fails to account for more recent developments in OVUII case law. Specifically, under this court’s decision in Wheeler, Walker’s HOVUII charge did not adequately allege the lesser-included offense of OVUII as a first offender pursuant to HRS §§ 291E-61(a)(l) and (b)(1). As such, it would be improper to remand this case for entry of judgment of conviction and sentencing based upon a deficient lesser-included charge.
Id. We further explained:
Walker’s Application ... requires us to clarify Ruggiero and Kekuewa in the context of Wheeler. The current essential elements that the State must include in an OVUII charge differ from those required in 2007 at the time of the Ruggiero and Kekuewa decisions. Again, post -Wheeler, OVUII charges must now allege the attendant circumstance that the defendant operated a vehicle “on a public way, street, road, or highway.”
[[Image here]]
Walker’s argument fails to account for Wheeler’s contribution to Hawaii’s OVUII case law.
Id. at 489-90, 273 P.3d at 1175-76 (citation omitted, some formatting altered). Thus, Walker repeatedly clarified that Wheeler changed the law of OVUII by imposing more onerous charging requirements on the State than those that were required at the time Kekuewa and Ruggiero were decided.
d. Wheeler Established a New Rule
Wheeler is consistent with the “paradigm” new rules cases because it imposed an obligation on the State that was not compelled *289 by prior law. See Teague, 489 U.S. at 801, 109 S.Ct. 1060 (“[A] case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government.”). As explained in Walker, the “current essential elements that the State must include in an OVUII charge differ from those required in 2007 at the time of the Ruggiero and Kekuewa decisions.... [P]ost-Wheeler, OVUII charges must now allege the attendant circumstance that the defendant operated a vehicle ‘on a public way, street, road, or highway.’ ” 126 Hawai'i at 490, 273 P.3d at 1176.
Wheeler is also a “paradigm” new rule case because it held that the State’s routine charging practice was unconstitutional despite this court’s contrary directives in Rug-giero and Kekuewa. By remanding Ruggie-ro and Kekuetva for entry of judgment and resentencing based on OVUII charges that omitted the public road element, this court had provided a degree of judicial approval over the practice of charging OVUII in the language of the statute. See Ruggiero, 114 Hawai'i at 240, 160 P.3d at 716 (stating that a complaint mirroring only the provisions set forth in HRS § 291E-61(a)(l) sufficiently described the first-level OVUII offense under HRS §§ 291E-61(a) and (b)(1)); Johnson, 467 U.S. at 558, 102 S.Ct. 2579 (stating that a case establishes a new rule when it overrides a routine practice supported by statutory language and repeated judicial approval); James B. Beam Distilling Co., 501 U.S. at 534, 111 S.Ct. 2439 (“[Njonretroaetivity may be entertained” when a judicial decision departs from “precedent upon which the contest would otherwise be decided differently and by which the parties may previously have regulated their conduct.”). In other words, although Wheeler declined to overrule Ruggiero and Kekuewa, it eroded future reliance on the routine charging practices that this court had relied upon when it directed trial courts to enter judgments of conviction in those decisions.
To the extent that Wheeler was consistent with precedent from this court, it also fits in the category of eases that establish a new rule because “the result was not dictated by precedent existing at the time the defendant’s conviction became final.” Teague, 489 U.S. at 301, 109 S.Ct. 1060 (emphasis in original). No prior case had held that an oral charge was constitutionally insufficient due to the failure to allege the public roads element of OVUII. Thus, Wheeler broke new ground by establishing a constitutional rule that, as a matter of law, controls an entire category of cases. See Walker, 126 Hawai'i at 489, 273 P.3d at 1175 (acknowledging Wheeler’s “contribution to Hawaii’s OVUII case law”). Inasmuch as Wheeler, presented a “distinct issue” that had not been determined by precedent, it is analogous to a case like Payton, which answered a question of constitutional law that the Supreme Court had previously left unresolved. Wheeler, 121 Hawai'i at 399, 219 P.3d at 1186 (“Contrary to the argument of the State ... the holdings of [Ruggiero and Kekuewa ] ... are not dispositive of the distinct issue presented here.”). Conversely, Wheeler is dissimilar from a case like Loo, which merely applied the well-settled rule that during a Terry stop, Miranda warnings are not required until the point of arrest or accusation has been reached. 94 Hawai'i at 210, 10 P.3d at 731.
The Majority’s conclusion that Wheeler is not a new rule is difficult to reconcile with this court’s recognition that the “current essential elements that the State must include in an OVUII charge differ from those required in 2007,” and that the difference is solely attributable to this court’s decision in Wheeler. Walker, 126 Hawai'i at 490, 273 P.3d at 1176. The Majority’s assertion that Wheeler merely engaged in statutory interpretation is also erroneous. Majority at 276, 361 P.3d at 1179. This court’s holding in Wheeler centered on a constitutional determination that the statutory definition of the word “operate” would not be readily comprehensible to a person of common understanding because it differed from the colloquial definition of “operate.” In other words, our holding rested on the requirements of due process.
The Majority also argues that Wheeler did not establish a new rule because it did not overrule or modify Ruggiero and Kekuewa. Majority at 274, 361 P.3d at 1177. Although *290 overruling is by no means the only way a ease might establish a new rule, Walker clarified that Wheeler did, in fact, render Ruggie-ro and Kelcuewa unreliable for the proposition that a defendant who is not given fair notice of the public roads element may nonetheless be convicted of OVUII as a first offense. Simply put, this court has already determined that Wheeler modified Hawaii’s OVUII case law.[5]
Finally, as a policy matter, close cases should be resolved in favor of a determination that a new rule has been created. This is so because the threshold “new rule” inquiry simply determines whether or not the court has the authority and the responsibility to weigh the merits and demerits of retrospective effect. See State v. Peralto, 95 Hawai'i 1, 6, 18 P.3d 203, 208 (2001) (“Free to apply decisions with or without retroactivity, the Court’s task is to exercise its discretion, weighing the merits and demerits of retroactive application of the particular rule.”) (citations and quotation marks omitted). If cases that advance the law by smaller degrees are not considered new rules, then appellate courts would routinely be deprived of an important tool in the administration of justice.
For the reasons stated herein, I would hold that Wheeler established a new rule. The Majority’s contrary conclusion is dictum in that it has no impact on the Majority’s ultimate conclusion that Schwartz waived her constitutional challenges by pleading guilty. See Pierre N. Leval, Judging Under the Constitution: Dicta About Dicta, 81 N.Y.U. L.Rev. 1249,1256 (2006) (“If the court’s judgment and the reasoning which supports it would remain unchanged, regardless of the proposition in question, that proposition plays no role in explaining why the judgment goes for the winner. It is superfluous to the decision and is dictum.”). The Majority decides this case under Morin, and thus, following a conclusion that a challenge to the sufficiency of a charge is a nonjurisdictional issue, Morin precludes Schwartz’s claim without consideration of the merits of her challenge. Therefore, resolving the question of whether Wheeler retroactively applies to the merits of Schwartz’s claim does not bear directly upon that disposition. Whether Wheeler announced a new rule or not, Schwartz’s claim would be precluded under the Majority’s application of Morin, and the Majority’s retroactivity discussion is, therefore, superfluous and dictum.
3. Retroactivity and Collateral Review
Having determined that Wheeler established a new rule, the question becomes whether that rule should apply retroactively to collateral review of convictions that became final before Wheeler was decided. This analysis must begin with an assessment of “ ‘the nature, function, and scope of the adjudicatory process in which such cases arise. The relevant frame of reference, in other words, is not the purpose of the new rule whose benefit the [defendant] seeks, but instead the purposes for which [collateral review] is made available.’” Teague, 489 U.S. at 305, 109 S.Ct. 1060 (quoting Mackey v. United States, 401 U.S. 667, 682, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring)).
Although HRPP Rule 40 provides an “ ‘avenue for upsetting judgments that have become otherwise final,’ ” it is “ ‘not designed as a substitute for direct review.’ ” Teague, 489 U.S. at 305, 109 S.Ct. 1060. Put differently, the scope of HRPP Rule 40 is not defined “simply by refei'ence to a perceived need to assure that an individual accused of crime is afforded a trial free of constitutional error.” Kuhlmann v. Wilson, 477 U.S. 436, 447, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986) (plurality opinion). Rather, the interest in “ ‘reducing the controversy to a final judgment not subject to further judicial revision, may quite legitimately be found ... to outweigh in some, many, or most instances the *291 competing interest in readjudieating convictions according to all legal standards in effect when a [Rule 40] petition is filed,’ ” Teague, 489 U.S. at 306, 109 S.Ct. 1060 (quoting Mackey, 401 U.S. at 682-83), 91 S.Ct. 1160.
Application of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system. Without finality, the criminal law is deprived of much of its deterrent effect. The fact that life and liberty are at stake in criminal prosecutions shows only that conventional notions of finality should not have as much place in criminal as in civil litigation, not that they should have none. If a criminal judgment is ever to be final, the notion of legality must at some point include the assignment of final competence to determine legality. No one, not criminal defendants, not the judicial system, not society as a whole is benefitted by a judgment providing that a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation.
[[Image here]]
In many ways the application of new rules to cases on collateral review may be more intrusive than the enjoining of criminal prosecutions, for it continually forces the States to marshal resources in order to keep in prison defendants whose trials and appeals conformed to then-existing constitutional standards.
Id. at 309-10, 109 S.Ct. 1060 (internal citations and quotation marks omitted); see also Solem v. Stumes, 465 U.S. 638, 654, 104 S.Ct. 1338, 79 L.Ed.2d 579 (Powell, J., concurring) (“The costs imposed upon the state by retroactive application of new rales of constitutional law on habeas corpus ... generally far outweigh the benefits of this application,”).
Based on the foregoing principles, the general rale for retroactivity on collateral review is that “new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced.” Teague, 489 U.S. at 310, 109 S.Ct. 1060. However, there are two exceptions. First, “a new rule should be applied retroactively if it places ‘certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe[.]’ ” Id. at 311, 109 S.Ct. 1060 (quoting Mackey, 401 U.S. at 692, 91 S.Ct. 1160); see, e.g., Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (holding that a Connecticut law criminalizing the use of contraceptives unconstitutionally intrudes upon the right of marital privacy). Second, a new rule should be applied retroactively if it requires the observance of those procedures that are implicit in the concept of ordered liberty. Teague, 489 U.S. at 311, 109 S.Ct. 1060. More specifically, the second exception is “reserved for watershed rules of criminal procedure,” in other words, “those new procedures without which the likelihood of an accurate conviction is seriously diminished.” Id. at 311-13, 109 S.Ct. 1060. For example, “the right to counsel at trial [has] now [been] held [to be] a necessary condition precedent to any conviction for a serious crime.” Id. at 311-12, 109 S.Ct. 1060 (citation and quotation marks omitted).
In this case, neither exception to the general rule applies. The first exception does not apply because Wheeler did not remove a category of private conduct from the reach of criminal prohibition. Rather, it merely imposed a new procedural requirement on the State. The second exception does not apply because Wheeler was not the kind of watershed rule of criminal procedure without which the likelihood of an accurate conviction is seriously diminished. As Christian recognized, “there is no indication that the State, the trial court, or the defendants were generally unaware of the State’s obligation to prove the public-road element, or that defendants driving on non-public roads were being convicted of OVUII.” 131 Hawai'i at 160, 315 P.3d at 786. Accordingly, I would hold that Wheeler does not apply retroactively to cases that were final at the time Wheeler was decided.
B. HRPP Rule 40(a)(3)
Assuming arguendo that Wheeler did not establish a new rule, I would resolve this *292-332 case pursuant to the standards enunciated in HRPP Rule 40(a)(3):
Rule 40 proceedings shall not be available and relief thereunder shall not be granted where the issues sought to be raised have been previously ruled upon or were waived.
Except for a claim of illegal sentence, an issue is waived if the petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this rule, and the petitioner is unable to prove the existence of extraordinary circumstances to justify the petitioner’s failure to raise the issue. There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.
Schwartz failed to cany the burden established by HRPP Rule 40(a)(3) in two respects. First, she did not challenge the sufficiency of the charge against her before her conviction became final. Thus, if Wheeler did not establish a new rule, as the Majority now holds, then Schwartz’s failure to allege a Wheeler defect would constitute waiver. Furthermore, if Wheeler is not a new rule, the fact that it was decided after Schwartz’s conviction became final would not constitute an “extraordinary circumstance” that would justify her failure to challenge the sufficiency of the charge before her plea. Second, Schwartz has not attempted to overcome the “rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.” If she had, for example, presented some evidence that she was not driving on a public road, then it would suggest that her failure to challenge the sufficiency of her charge was not knowing and understanding. But no such assertion has been made. Therefore, I conclude that the district court properly denied Schwartz’s HRPP Rule 40 petition pursuant to the standards enunciated in HRPP Rule 40(a)(3).
I disagree with the Majority’s exclusive reliance on State v. Morin, 71 Haw. 159, 785 P.2d 1316 (1990), as the primary grounds to affirm the district court’s denial of Schwartz’s petition. See Majority at 280, 361 P.3d at 1183. Because Morin only addresses convictions that resulted from guilty or nolo contendere pleas, it artificially narrows the Majority opinion and leaves confusion over what standard will apply to defendants who did not plead guilty and who will undoubtedly argue that their final convictions should be overturned. HRPP Rule 40 petitions should be resolved pursuant to the standards that are outlined in the rule itself, in the first instance.
III. CONCLUSION
I would affirm the district court’s denial of Schwartz’s HRPP Rule 40 petition, but for the reasons stated herein. I join with the Majority in concluding that charging defects are not jurisdictional. See State v. Apollonio, 130 Hawai'i 353, 365, 311 P.3d 676, 688 (2013) (Recktenwald, C.J., concurring and dissenting, joined by Nakayama, J.) (“The sufficiency of a charge is not jurisdiction-alt.]”).

. "Payton expressly overruled no clear past precedent of this Court ... [n]or did Payton disapprove an established practice that the Court had previously sanctioned.... [I]ts ruling rested on both long-recognized principles of Fourth Amendment law and the weight of historical authority.” Id. at 552-53, 102 S.Ct. 2579 (footnotes omitted).

. The Majority asserts that our reading of Johnson is inaccurate and that "the Supreme Court in fact found that Payton was not a new rule.” Majority at 284, 361 P.3d at 1187. Although I would agree that the Supreme Court found that Payton did not fall under the class of cases that “announce[d] an entirely new and unanticipated principle of law[,]” Johnson, 457 U.S. at 551, 102 S.Ct. 2579, the Supreme Court never held that this one class of cases was the only class of cases where a new rule is announced. The class of cases that the Supreme Court said announced an entirely new and unanticipated principle of law—decisions that explicitly overrule past precedent, or disapprove a practice the court sanctioned in prior cases, or overturn a longstanding and widespread practice that the court has not addressed but has near-unanimous approval from lower courts—makes up what I refer to as the first category of cases above, whereas I have placed Payton in a second separate category of cases. Therefore, my categorization is consistent with and supported by Johnson.
The Majority further asserts that the Supreme Court analyzed the retroactivity of Payton under Justice Harlan’s retroactivity test because the Supreme Court in fact found that Payton was not a new rule. Majority at 279, 361 P.3d at 1182. However, this conclusion is wholly contradicted by what the Supreme Court did in Johnson. In discussing Justice Harlan's retroactivity test, the Supreme Court stated, "Those opinions uniformly have asserted that, at a minimum, all defendants whose cases were still pending on direct appeal at the time of the law-changing decision should be entitled to invoke the new rule. In Desist v. United States ... and Mackey v. United States ... Justice Harlan presented a comprehensive analysis in support of that principle. In his view, failure to apply a newly-declared constitutional rule at least to cases pending on direct review at tire time of the decision violated three norms of constitutional adjudication.” Johnson, 457 U.S. at 545-46, 102 S.Ct. 2579 (emphases added). The application of Justice Harlan's test presupposes a determination that a law-changing decision or new rule has been made. Therefore, the Supreme Court had to have found that Pay-ton was a new rule because it applied Justice Harlan’s test.

. Although Loo overruled an ICA opinion that was inconsistent with case law from this court, such overruling merely reaffirmed the continued vitality of our precedent.

. As noted above, neither Ruggiero nor Kekuewa utilized the liberal construction standard to supply the public roads element of OVUII.

. The Majority asserts that ''[t]his court has previously applied Wheeler retroactively.” Majority at 275-76 n. 31, 361 P.3d at 1178-79 n. 31 (citing State v. Tominiko, 126 Hawai'i 68, 76, 266 P.3d 1122, 1130 (2011); State v. Walker, 126 Hawai'i 475, 489, 273 P.3d 1161, 1175 (2012)). However, because these cases were not yet final when Wheeler was decided, application of Wheeler in these cases is consistent with limited or pipeline retroactive effect pursuant to a conclusion that Wheeler created a new rule.